ANTONIO LOVASCO & another *vs.* PARKHURST MARINE RAILWAY COMPANY.

Essex.   October 8, 1947. — November 28, 1947.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Evidence,* Opinion: expert.

All that is necessary for the admission of expert testimony is that the subject matter be one about which special knowledge beyond that possessed by the ordinary juryman will aid the jury in their deliberations, and that a person possessing such knowledge give opinions pertinent to the issues of the case founded upon facts which either are conceded or could warrantably be found upon other evidence. Per QUA, C.J.

At the trial of an action against the proprietor of a marine railway for personal injuries resulting from the tipping sidewise of a boat while it was being hauled out of the water on the railway, opinion testimony by a qualified witness, founded in part on his observation a few hours after the accident of a "shoe" at the bottom of the boat, upon which it had rested while in the cradle of the railway, and in part upon evidence as to the boat having tipped and struck a rock at its launching shortly before, that the "shoe" had not been properly fastened originally in construction, had been "started" by the occurrences at the launching, and had "let go" when the weight of the boat came upon it on the railway, was properly admitted in support of the defendant's contention that the tipping of the boat on the railway was due to such construction and "starting" of the "shoe" rather than to negligence of the defendant in blocking and handling the boat on the railway.

TORT.   Writ in the Superior Court dated July 16, 1945.
The action was tried before *Cabot, J.*

*A. L. Kaplan,* for the plaintiffs.

*J. Z. Doherty,* for the defendant.

QUA, C.J.   This action is now prosecuted against Parkhurst Marine Railway Company by the minor plaintiff Antonio Lovasco to recover for personal injuries and by his father Sebastian Lovasco to recover consequential damages, all resulting from the tipping sidewise of a fishing vessel about ninety feet in length while it was being hauled out of the water on the defendant's marine railway at Gloucester on June 3, 1944.   After verdicts for the defendant, the plaintiffs bring their bill of exceptions to the admission of certain evidence and to the denial of their motions for a new trial.

There was evidence tending to show these facts: The vessel was new, the hull having been launched at Essex only a week before the injury to the minor plaintiff.   During the launching, when the hull was partly in the water, it suddenly tipped toward the starboard side and struck a rock a few feet from the water's edge but righted itself. The "only visible damage to be observed" was some injury to sheathing where the hull came in contact with the rock. The vessel was towed to Gloucester, where the owner, according to his testimony, informed the defendant's manager of the accident at the launching and of the visible damage and arranged with him to have the vessel hauled out upon the defendant's railway for repair of the visible damage and "determination of any further and additional damage to the bottom of the vessel."   The hauling out was entirely in the control of the defendant.   Hauling out is accomplished by means of an engine and a chain attached to a cradle which is lowered into the water beneath the vessel and then pulled up the track with the vessel upon it.   Before the cradle is lowered "keel blocks" are placed upon it upon which the "shoe" at the bottom of the vessel is to rest. These "keel blocks" bear, or should bear, practically the entire weight of the vessel, but "bilge blocks" are also provided to be pulled in against the sides of the vessel

after the entire "shoe" is "grounded" firmly upon the "keel blocks," in order to prevent the vessel from tipping over. Upon the occasion in question, when the vessel had been hauled approximately two thirds of the way up the railway, it suddenly tipped over on its port side, apparently forcing out the "bilge blocks." The minor plaintiff, who was employed by the owner to work on the completion of the vessel, was permitted by the defendant to remain on board while the vessel was hauled out. When the vessel tipped, a stack of lumber fell upon him, causing the injuries complained of. After the accident it was discovered that a section of the "shoe" about fourteen feet long near the stern was "twisted and bent up to the side of the keel." There was evidence that the "shoe" was insufficiently bolted; that the bolts were pulled out or bent; that about half of them were rusty and half were not; that a small piece that had been set into the "shoe" was missing; and that the space so left and "the top of the shoe" were full of dirt and mud.

Further details of the evidence need not be stated. The plaintiffs' case rested upon the contention that the tipping of the vessel upon the railway was caused by negligence of the defendant in blocking and handling the vessel. The defendant contended that it was the result of defective construction of the "shoe" and of a previous injury to the "shoe" at the time of the launching which was not visible until the vessel was hauled out.

The evidence to the admission of which the plaintiffs excepted consisted of testimony both of observed physical facts and of opinions from an amply qualified ship builder and foreman whose position required him to supervise carpentry and to look after haulings and launchings. In substance this evidence consisted of a description of the condition of the "shoe" as observed by the witness a few hours after the accident and of the witness's opinions that the "shoe" was not properly fastened in the first place; that when the vessel went over at the launching "she started that shoe" and as a result of that it canted when grounded in the cradle; that the "shoe" was on an angle of probably

forty-five degrees and "tripped and threw the boat"; that when the weight came on the "shoe" "it let go"; that "she started that shoe when she went over in launching" at Essex; and that it remained partly detached until the vessel was hauled out on the railway at Gloucester.

In the course of receiving this evidence many exceptions were taken to particular questions and answers. We have examined these, but it would be unprofitable to discuss them in detail. Clearly the witness's own observation of the condition of the "shoe" was competent. There was no error in admitting the opinion evidence of the same witness. There is no prescribed formality for the admission of expert testimony. All that is necessary is that the subject matter be one about which special knowledge beyond that possessed by the ordinary juryman will aid the jury in their deliberations, and that a person possessing such knowledge give opinions pertinent to the issues of the case founded upon facts which either are conceded or could warrantably be found upon other evidence. The judge may order or permit the use of any proper method that conforms to these requirements. This whole subject was fully treated by Rugg, C.J., in *Commonwealth* v. *Russ*, 232 Mass. 58, at pages 72 to 78. There is no occasion to repeat what was there said. The record in this case discloses no failure to observe the foregoing requirements.

There was no error in denying the plaintiffs' motions for a new trial. They presented no new question of law. No abuse of discretion appears. *Kinnear* v. *General Mills, Inc.* 308 Mass. 344, 348–349.

We have not considered whether this was a case of a maritime tort, since even if it was, the jurisdiction of the court was not affected and no question of comparative negligence or other question peculiar to maritime law was presented. *Thorneal* v. *Cape Pond Ice Co.* 321 Mass. 528, 532–534.

*Exceptions overruled.*