SHELDON FORWARDING CO. *vs.* BOSTON AND MAINE RAILROAD.

Hampden. September 23, 1959. — November 5, 1959.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Fire. Negligence*, Fire. *Agency*, Scope of authority or employment. *Practice, Civil*, Auditor: findings. *Evidence*, Declaration of deceased person; Opinion: expert.

Evidence in an action warranted findings that an employee of the defendant, while burning rubbish in incinerators in an open space near a building having a raised platform attached, dumped a load of rubbish in front of an incinerator and set fire to it at a time when there was a strong wind blowing toward the platform, and that sparks or burning fragments were blown into grass and rubbish under the platform and started a fire which spread to the platform and building and damaged property of the plaintiff; and justified a conclusion that the employee was negligent. [682–683]

Where it could be found that disposal of rubbish customarily burned in incinerators was within the general scope of the employment of an employee of the defendant in an action for damage to property claimed to have been caused by a fire starting from sparks or burning fragments blown by a strong wind from rubbish burned outside the incinerators, it would be immaterial to the defendant's liability that the employee acted contrary to instructions in burning the rubbish outside the incinerators. [683]

A finding for the defendant in an action by an auditor who found that the cause of a fire which was the basis of the action was conjectural was not binding on the jury at a subsequent trial where additional evidence was presented warranting a finding that the fire was caused by negligence of an employee of the defendant. [683]

Statements of a deceased person respecting the starting of a fire were properly admitted in an action arising from the fire where the judge made the preliminary findings required by G. L. c. 233, § 65. [683]

No error was shown on the record in an action in admitting testimony of a qualified witness as to the cause of a fire, based on his investigation of the scene of the fire after it occurred and certain assumed facts pertaining to its occurrence. [683–684]

TORT. Writ in the Superior Court dated July 29, 1952.

The action was tried before *Macaulay, J.*

*Stephen A. Moynahan,* (*Charles S. Cohen* with him,) for the defendant.

*John H. Madden, Jr.,* (*Edward J. Barry* with him,) for the plaintiff.

WILLIAMS, J. This is an action of contract or tort originally brought by two plaintiffs, but after discontinuance by one, Sheldon Transfer & Storage Company, was prosecuted only by the other, Sheldon Forwarding Co., on a count sounding in tort to recover damages for the negligent burning of its own property and property of which it was custodian. The action was referred to an auditor who found for the defendant. His findings of fact were not final and the case was retried before a jury on his report and additional evidence presented by the plaintiff. At the conclusion of the evidence the judge denied a motion of the defendant for a directed verdict. There was a verdict for the plaintiff taken under leave reserved and a subsequent denial of a motion by the defendant that a verdict be entered for it. The case is here on exceptions by the defendant to the denial of its motions and to various rulings on evidence. We shall consider only those which have been argued.

It appears that the plaintiff, which was in the business of forwarding paper products by rail, leased from the defendant the southerly end of a freight house located in its Holyoke yard with a raised covered platform extending from the

freight house in a southerly direction along the defendant's tracks some two hundred twenty feet to a ramp at Appleton Street. West of the tracks and between the freight house and Appleton Street was an open area measuring about two hundred twenty feet north and south and eighty-six feet east and west. It was used by trucks to reach the platform for the delivery and receipt of goods. In this area the defendant had installed two incinerators for the burning of rubbish. They were located fifty to seventy-five feet west of the platform and ninety-two feet from a stairway leading from the ground to the platform at the southerly end of the freight house where the plaintiff had its office. These incinerators were cylindrical in shape and stood about five feet from the ground with the bottoms raised slightly from the ground to "allow for draft up through the cylinders." The tops of the incinerators were covered partly by metal sheets and partly by iron meshes which could be slid over the sheets.

At or about 11 A.M. on October 29, 1951, there was a fire in the grass and rubbish under the platform near the stairway which spread to the platform and house and caused substantial damage to the plaintiff's property and merchandise which it had in custody. The primary issue in the case is the cause of the fire.

There was evidence that when it started there were four men present in the area, Champagne, a truck driver who had driven into the yard to deliver paper, McMahon and Wojciak, employees of the plaintiff, and one Bernier, an employee of the defendant. Only Bernier testified before the auditor, who found that on that morning, before the fire was discovered, Bernier "cleaned paper from some of the cars, wheeled it in a wagon to and put it in the incinerators by hand"; that "[h]e was regularly employed as a laborer and truckman and took over this particular work on this one day because of the absence of the employee who did it regularly"; and that it was customary for the defendant's employees to burn rubbish in the incinerators "nearly every morning between approximately 7:30 and 10 o'clock." Mc-

Mahon had died before the auditor's hearing but there was testimony at the hearing of oral statements made by him that he saw a fire in the incinerator, that it was a windy day, and that the fire under the platform was started by sparks from the incinerators. There was also testimony of contrary statements made by him in writing and the auditor concluded that "the cause of the original start of the fire was conjectural, and . . . not established as attributable to any act of the defendant through its servants or agents, negligent or otherwise."

Both Champagne and Wojciak testified before the jury. The former said that as he drove his truck into the yard there was a fire burning outside and in front of the incinerators and the "wind was blowing the leavings 'all over the place'" between the incinerator and the platform. Smoke was blowing toward the office part of the platform. After four loads had been taken from the truck fire was noticed underneath the platform and the fire department was called.

Wojciak testified that while he was helping unload the truck a railroad employee cleaned out the cars, using a two wheel cart. The man left the platform by the ramp and dumped one load outside and in front of the incinerator. As Wojciak "came out of the trailer with a load there was a fire there, right in front of the incinerator, and the same man was standing about a couple of feet away." Wojciak "asked him what the idea was to start a fire on such a windy day." Sparks were flying and a spark hit him in the face while he was on the platform "just about at the steps." It was a very windy day, the wind southwest. On going down the steps he saw a blaze under the platform. There was also testimony similar to that before the auditor of oral statements made by the deceased McMahon that he saw a fire in the incinerator and embers were flying around. Puzzo, a lieutenant of the State police, testified that he arrived at the scene around 2 P.M. and saw "quite a bit of ash — around the outside of the base of the incinerators, close to it."

The evidence was sufficient to warrant a finding by the jury that the fire under the platform was started by sparks

or burning fragments of refuse blown from a fire at the base of an incinerator. *Deerfoot Farms, Inc.* v. *New York, N. H. & H. R.R.* 327 Mass. 51, 55. It could be found that the man who dumped the rubbish at the incinerator was Bernier, who, the auditor found, was an employee of the defendant; that he carried it there to be burned; that he set fire to the rubbish; and that with the wind blowing strongly toward the building and platform he was negligent in so doing. If, as the defendant contends, he exceeded his authority in burning rubbish outside of the incinerator, its disposal could be found to have been within the general scope of his employment. If he acted contrary to his instructions, it was immaterial. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 519. There was no error in denying the defendant's motions for a verdict in its favor. In view of the additional evidence presented at the trial the jury were not bound by the finding of the auditor for the defendant. *Cook* v. *Farm Serv. Stores, Inc.* 301 Mass. 564, 567.

Exceptions were saved to the admission of the oral statements of McMahon and the testimony of Puzzo that in his opinion the fire under the platform was started by sparks or burned debris blown from a fire at the incinerator. As to the statements of McMahon they were admitted only after the requisite preliminary findings had been made by the judge. He was warranted in finding that they were made upon the personal knowledge of the declarant. G. L. c. 233, § 65.

Puzzo's testimony was given in reply to a question, "From your independent investigation . . . made the day of the fire and assuming that there was . . . before the big fire started, a fire burning near or outside the incinerator as described by the witness Leo Champagne and assuming that the wind was blowing from a general southwesterly direction . . . do you have an opinion of what caused the fire?" When the question was asked, the only evidence of his investigation was his statement of what he observed after the fire. He was qualified to express an opinion as to the cause and the exception to the question cannot be sus-

tained.   On cross-examination Puzzo testified that his only knowledge of the existence of sparks came from talking with McMahon and Wojciak.   If this evidence served to render his answer to the prior inquiry inadmissible, which we do not intimate, no motion was made to strike out the answer.

*Exceptions overruled.*