HARRY JANKELLE vs. BISHOP INDUSTRIES, INC.

Suffolk.   May 8, 1968. — June 13, 1968.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Negligence*, Bottle, Manufacturer.

In an action against the manufacturer of a lotion by the manager of a pharmacy to recover for injuries sustained when a leaking bottle of the lotion which he had picked out of a cardboard carton of twelve bottles and was holding and examining fell apart and cut his hand, evidence tending to exclude the possibility of negligent handling of the carton on the part of the plaintiff or of a wholesale distributor who received the carton from the defendant's factory by common carrier, placed it in its warehouse, and delivered it by truck to the pharmacy, or in the transportation of the carton, and of the faultless condition of the carton and its inner corrugated partitions and of the other eleven bottles when introduced at the trial, warranted an inference that the leaking bottle was damaged before it was delivered to the common carrier, and the allowance at the close of the plaintiff's case of the defendant's motion for a directed verdict was error.

TORT.   Writ in the Municipal Court of the City of Boston dated March 16, 1962.

Upon removal to the Superior Court the action was tried before *Forte*, J.

*Morris Shultz* (*Henry H. Shultz* with him) for the plaintiff.
*Paul K. Marshall*, for the defendant, submitted a brief.

SPIEGEL, J.   In this action of tort the plaintiff seeks to recover for injuries he sustained when his hand was cut by a bottle containing a hairdressing lotion manufactured by the defendant.   At the close of the plaintiff's case the trial judge allowed the defendant's motion for a directed verdict, subject to the plaintiff's exception.   The parties stipulated that if this was error, "judgment was to be entered for the plaintiff in the sum of ($1200) twelve hundred dollars, together with costs."

We summarize the evidence most favorable to the plaintiff. The plaintiff is a registered pharmacist and has been em-

ployed as manager of Andrew Pharmacy since 1946. Included in his duties were that of purchasing merchandise, and checking and unpacking merchandise. On receipt of merchandise containing alcohol, he would check the caps on "each bottle for tightness . . . to prevent possible evaporation." On October 25, 1961, the plaintiff placed an order with a wholesale distributor for one dozen bottles of "Lanolin Plus" and for several other products. Two or three weeks earlier, the distributor had received a sealed carton of "Lanolin Plus" sent from the defendant's factory by common carrier; "[t]he carton was examined, found to be in good condition, and was placed in the . . . warehouse. It was the custom and practice of . . . [the distributor] to examine such goods upon arrival . . . and if the package was found to be crushed or damaged it was returned to the manufacturer. . . . The carton package . . . in question was in good condition when it left the . . . [distributor's] warehouse." The truck driver who delivered the "Lanolin Plus" to the pharmacy was "always careful in loading his truck with merchandise and if he found a package that appeared to be crushed or damaged, he would not deliver it but would return it to his employer's place of business." On October 26, 1961, this driver delivered three cartons of merchandise, one of which was the "Lanolin Plus," to the pharmacy. When delivered, "[t]he cartons were in good condition and undamaged."

The three cartons were tied together, with the one containing "Lanolin Plus" on the top. The cartons were placed upright in an alcove in the store. The following day the plaintiff "approached the cartons and found them in the same position as they were when left . . . the day previous. The cartons were in good condition, undamaged, and tied together. He untied the string and took the carton of Lanolin Plus . . . and placed it on a table. . . . [It] measured approximately nine inches long, seven inches wide, and five and one-half inches in height. After breaking the seal, the plaintiff opened one end of the carton and drew out an inner package." This package was of a lighter

cardboard than the outer one and it "also had a fold-over cover attached to it which acted as a display card." The package contained twelve compartments separated by corrugated cardboard partitions. In each compartment there was a bottle of "Lanolin Plus." The plaintiff began removing the bottles, one at a time, checking the cap on the bottle and then replacing it in the compartment from which he had taken it. After checking ten of the bottles he picked up the eleventh which was "in the middle compartment at the end row, and noticed that the bottle was one-third to one-half full, was wet on the bottom and had a crack in it. Some of the Lanolin Plus had leaked out of the bottle to the bottom of the compartment and had dried out, and a smaller amount was still in liquid condition. He realized the bottle was leaking but did not know where the leak was located. He thereupon checked the cap for tightness with his right hand, while holding the bottle in his left hand, at which point the bottle fell apart and cut his left hand." The carton, the inner package and the twelve bottles of "Lanolin Plus" were admitted as exhibits and are before us.

The defendant argues that the "plaintiff offered no evidence to show that the bottle which caused his injury was not mishandled by the common carrier who transported it from the defendant's factory . . . to the premises of . . . [the distributor]." He concludes, therefore, that "[n]o evidence of negligence on the part of the defendant was introduced . . . [and that] [n]o inference of negligence is warranted." We do not agree.

Our examination of the exhibits reveals that the carton is virtually without any indentations or marks to indicate any mishandling by the common carrier. The inner package is similarly unmarked. The corrugated partitions separating the compartments in the package are still in an upright position and are unmarked. Eleven of the bottles are intact.

While it may be possible, it appears highly improbable that the breaking of the bottle could have occurred as the result of any action by those engaged in the actual expressage

or delivery of the box. It seems to us that the only reasonable inference to be drawn is that the bottle was damaged before it was delivered to the carrier. The plaintiff need not exclude every possible cause for his injuries. He is only required to show a greater likelihood that his injury was caused by the defendant's negligence than by some other cause. *Rocha* v. *Alber,* 302 Mass. 155, 157–158. *Evangelio* v. *Metropolitan Bottling Co. Inc.* 339 Mass. 177, 180. *Potter* v. *John Bean Div. of Food Mach. & Chem. Corp.* 344 Mass. 420, 425. In the instant case, there was evidence tending to exclude the possibility of negligent handling on the part of the plaintiff or of the distributor. Evidence that the carton was received by the distributor from the common carrier in an undamaged condition, and with the seal unbroken, supports the inference that there was no mishandling on its part. Having reviewed the evidence and having observed the still faultless condition of the package, we conclude that the plaintiff has sustained his burden. It was therefore error to direct a verdict for the defendant.

The exception is sustained and in accordance with the stipulation "judgment . . . [is] to be entered for the plaintiff in the sum of $1200 . . . with costs."

This is a majority opinion.

*So ordered.*