ELLEN KENNEY & another *vs.* SEARS, ROEBUCK & COMPANY
& another.

Middlesex. March 5, 1969. — April 9, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Negligence,* Manufacturer, Refrigerator. *Proximate Cause. Sale,* Warranty. *Practice, Civil,* Amendment. *Evidence,* Opinion: expert.

At the trial of an action for negligence against the manufacturer of a refrigerator which had been running, with signs of defective operation and without repairs, for about a year after delivery to and installation in an apartment before the apartment and personal property therein were damaged by fire, evidence did not permit conclusions that it was more likely that the fire arose from causes within the refrigerator than from causes, including wiring defects and short circuits, outside the refrigerator, or that any negligence of the defendant was an effective cause of the fire. [608]

An action for breach of implied warranties of fitness and merchantability with respect to a refrigerator sold by the defendant to the tenant of an apartment in a house owned by her and her mother as tenants in common could not be maintained by the mother under G. L. c. 106, § 2–318, following damage to the house and personal property therein by fire allegedly caused by defects in the refrigerator where it appeared that no injuries to the mother's person were sustained. [608–609]

In an action by the purchaser of a refrigerator installed in an apartment, and by her mother, an owner in common with her of the apartment house, against the manufacturer of the refrigerator, which allegedly was defective and caused a fire resulting in damage to the house and personal property therein, there was no abuse of discretion or harm to the mother in the denial of a motion filed by the plaintiffs at the time of the trial to amend the declaration so as to add a count by the mother for negligence where the evidence had no greater tendency to warrant a verdict for her thereon than it did to warrant a verdict for the daughter on a count by the daughter originally in the declaration based on negligence on which a verdict was properly directed for the defendant. [609–610]

At the trial of an action against the manufacturer of a refrigerator having electrical wiring for damage from a fire allegedly caused by the refrigerator, there was no error in permitting a field service engineer who had worked for the defendant for many years "servicing re-

frigerators" and repairing them to express his opinion that the fire "was not the refrigerator's fault," even though he was not an electrician or an electrical engineer. [610]

TORT OR CONTRACT. Writ in the Superior Court dated July 17, 1962.

The action was tried before *Moynihan*, J.

*Philip D. Epstein* (*Solomon M. Feldman* with him) for the plaintiffs.

*John F. Finnerty* for the defendants.

CUTTER, J. Mrs. Kenney bought from Sears, Roebuck & Company (Sears) in June, 1960, a refrigerator manufactured by another defendant, The Whirlpool Corp. (Whirlpool). She received a written warranty of one year on the electrical wiring and five years on the sealed units, in each instance "to the extent that" Sears would within the stated period "at . . . [its] option, either repair or replace and install (with comparable equipment) at no additional cost to the owner" any unit or part found to Sears's satisfaction to be defective.

The refrigerator was delivered to Mrs. Kenney's apartment in a house owned by her and her mother, Mrs. Copanas (also a plaintiff), as tenants in common. The refrigerator was plugged into an electrical outlet and was not moved until the fire mentioned below.

About two months after the installation the refrigerator began to give off a "funny odor." Mrs. Kenney called the Sears service department "at least five or six times during . . . 1960." Nobody came, but "she never wrote to Sears." In 1961 she still had trouble, an odor from the refrigerator "like something burning, and with it every once in a while" she would hear a "clicking sound." The refrigerator would not freeze ice cream in the freezing compartment. She, however, was still making monthly payments on the refrigerator.

On July 10, 1961, about 5:20 P.M. she left the house. As she was sitting on the stairs of a neighbor's house, she observed black smoke coming from her house. The fire department came about 7:25 P.M. and remained until mid-

night. There was damage to the real estate and to personal property.

This action of tort or contract was brought July 17, 1962. The declaration was in twelve counts described in the margin.[1] The trial judge directed a verdict for the defendants on all counts except those against Sears numbered 3 and 4 and for Sears on the claim of Mrs. Copanas set out in count 3. The jury returned verdicts for Sears on Mrs. Kenney's claims on counts 3 and 4. The facts, including those set forth above, are stated in the aspect most favorable to the plaintiffs. The case is before us on the plaintiffs' exceptions to the action of the trial judge in directing verdicts, to the admission of certain opinion testimony, and to the denial of a motion for leave to file a substitute declaration.

1. Herman Brettman was called as an expert witness by the plaintiffs. His is the only expert testimony referred to in the plaintiffs' brief as supporting submission of the case to the jury on the issue of Whirlpool's negligence. He expressed the opinion that the odor, the clicking sound heard by Mrs. Kenney, and the refrigerator's failure to freeze ice cream would indicate that "the refrigerator was not functioning properly," with the consequence that an excessive load was placed on the motor and compressor, drawing excessive current, which in turn generated heat and excessive

| [1] Count * | Plaintiff | Defendant | Basis |
|---|---|---|---|
| 1–2 | Kenney | Sears | express warranty |
| 3 | Kenney and Copanas | Sears | implied warranties of fitness and merchantability |
| 4 | Kenney | Sears | implied warranties of fitness and merchantability· |
| 5–6 | Kenney | Sears | negligence in sale of defective refrigerator |
| 7 | Kenney and Copanas | Whirlpool | implied warranty of fitness |
| 8 | Kenney | Whirlpool | implied warranty of fitness |
| 9 | Kenney and Copanas | Whirlpool | implied warranties of fitness and merchantability |
| 10 | Kenney | Whirlpool | implied warranties of fitness and merchantability |
| 11–12 | Kenney | Whirlpool | negligence in manufacture of defective refrigerator. |

* Counts 1, 5, and 11 do not clearly state that Mrs. Copanas was a plaintiff as to those counts. Counts 1, 3, 5, 7, 9, and 11, however, allege injury to the real estate owned by the plaintiffs in common. Counts 2, 4, 6, 8, 10, and 12 seek recovery only for damage to Mrs. Kenney's personal property.

running, starting, and stopping of the motor.[2] This "malfunctioning of the refrigerator was a danger signal which, if it had been observed promptly and . . . corrected, would not have permitted this excessive heating to continue to the point" of combustion. The witness conceded, however, that certain wires denuded of insulation could "have been in that condition from the effect of fire outside the refrigerator." There was evidence of exposed wires at the rear of, and outside, the refrigerator.

As we read the testimony of other expert witnesses, they also could not say whether the fire was caused within the refrigerator or by some external combustion. The deputy chief of the Somerville fire department gave the opinion that "what appears to have happened was that there was a faulty refrigerator fire wiring . . . . Wires *leading to or in* the refrigerator" (emphasis supplied). The chief similarly gave the opinion that there was "faulty refrigerator fire wiring" and "that the fire originated in the area of the refrigerator."

Whirlpool "surrendered control of the" refrigerator at some date, not fixed by the evidence, prior to Sears's delivery of it to Mrs. Kenney. There was no showing whether it was delivered to Sears in good order or that it had not been mishandled by Sears, or by other handlers on its way from Whirlpool to Sears. See *Carney* v. *Bereault*, 348 Mass. 502, 506–507. Cf. *Evangelio* v. *Metropolitan Bottling Co. Inc.* 339 Mass. 177, 182–184; *Beauchesne* v. *Coleman Co. Inc.* 350 Mass. 646, 647 (stove, "in the same condition as when it left the place of manufacture," which exploded when first used); *Jankelle* v. *Bishop Indus. Inc.* 354 Mass. 491, 493–494.

The refrigerator, after delivery to Mrs. Kenney, had been running (with signs of defective operation) for over a year without being repaired, thus presenting the issue whether Whirlpool reasonably might rely on Sears, as retailer, to

---

[2] The evidence did not indicate that the wiring inside a sealed motor compressor unit had been damaged by the fire. The unit operated after the fire when attached to current of the proper voltage.

make necessary repairs under its warranty. See *Haley* v. *Allied Chem. Corp.* 353 Mass. 325, 330. There was also evidence that the Somerville fire chief "followed the line from the outlet into which the refrigerator was plugged back to the fuse box and removed a 30 ampere fuse." Although it is not clear that this fuse was on the circuit with the refrigerator, such a "30 ampere fuse was not a proper fuse for the branch line . . . at the outlet" and "would probably provide no protection in any ordinary household."

The evidence, in our opinion, does not contain any definite statements of fact or expressions of expert opinion permitting the conclusion that it was more likely that the fire arose from causes within the refrigerator than from causes, including wiring defects and short circuits, outside the refrigerator. Essentially, the precise cause of the fire is left to conjecture and surmise. There also is no adequate basis in the evidence for an inference that there was any negligent act in the course of manufacture, that any defect occurred in Whirlpool's factory which was discoverable by reasonable inspection, or that there was a balance of probabilities in favor of some negligence by Whirlpool which was an effective cause of the fire. See *Smith* v. *Rapid Transit Inc.* 317 Mass. 469, 470. Cf. *Sargent* v. *Massachusetts Acc. Co.* 307 Mass. 246, 250; *Beaver* v. *Costin*, 352 Mass. 624, 627.

The burden still remains upon the plaintiffs, in a case (see *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92, 96–98) brought by persons not in privity with the manufacturer, to show that "a defect attributable to the manufacturer's negligence caused the injury." See *Carney* v. *Bereault*, 348 Mass. 502, 506. That burden has not been sustained by these plaintiffs in the counts against Whirlpool based on negligence. So far as the counts against Whirlpool are framed on any basis other than negligence, they do not state any ground of liability recognized in *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92, 96–98.

2. The jury found for Sears on counts 3 and 4 containing Mrs. Kenney's allegations of breach by Sears of implied

warranties of fitness for a particular purpose and of merchantability. The judge, by directing (upon Mrs. Copanas's claim) a verdict for Sears on count 3, correctly ruled that Mrs. Copanas could not recover against Sears on these implied covenants. Mrs. Copanas had not purchased the refrigerator and had no dealings with Sears. See *Kennedy* v. *Brockelman Bros. Inc.* 334 Mass. 225, 227; *Sullivan* v. *H. P. Hood & Sons, Inc.* 341 Mass. 216, 223.

We assume that if Mrs. Copanas's claim under count 3 had been based on negligence on the principles of *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92, 96–98, and if the evidence had supported liability under those principles, she could have recovered for injury to property (see *Brown* v. *Bigelow*, 325 Mass. 4, 5) as well as for personal injury. With respect, however, to any claim for breach of warranty, Sears's liability is limited by G. L. c. 106, § 2–318,[3] inserted by St. 1957, c. 765, § 1, to injuries to the *person* of those "in the family or household of" the buyer or of one "who is a guest in his home." See *Haley* v. *Allied Chem. Corp.* 353 Mass. 325, 331.

3. In their brief the plaintiffs have not argued exceptions to the judge's action in directing a verdict for Sears on counts 1 and 2 and on counts 5 and 6 sufficiently to require us to discuss them.

4. The plaintiffs at the time of trial filed a motion to substitute a wholly new declaration. The plaintiffs' brief suggests that the principal purpose of this was to include in behalf of Mrs. Copanas a count in tort for negligence against Whirlpool. The evidence had no greater tendency to warrant a verdict in tort against Whirlpool in behalf of Mrs. Copanas than it did to warrant one in favor of Mrs. Kenney. The trial judge did not abuse his discretion in refusing to permit the amendment and, in any event, in

---

[3] Section 2 – 318 reads, "A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and *who is injured in person* by breach of the warranty. A seller may not exclude or limit the operation of this section" (emphasis supplied).

the state of the evidence, Mrs. Copanas was not harmed. See *Brooks* v. *Gregory,* 285 Mass. 197, 206; *Reilly* v. *Revere Racing Assn. Inc.* 349 Mass. 763, and cases cited.

5. There was no error in permitting a field service engineer for Whirlpool to give his opinion whether there was a causal relationship between the refrigerator which he had examined and the fire. He had worked for Sears and Whirlpool "servicing refrigerators and air conditioners" since the World War II period and had extensive experience in refrigerator repairs. Although he was not an electrician or an electrical engineer, the judge could reasonably conclude that the witness had sufficient experience to enable him to be of assistance to the jury and, in his discretion, could permit him to express the view that the fire "was not the refrigerator's fault." See *Lovasco* v. *Parkhurst Marine Ry.* 322 Mass. 64, 67; *Commonwealth* v. *Monahan,* 349 Mass. 139, 165.

*Exceptions overruled.*