**SEARS, ROEBUCK & COMPANY et al.,**
**Plaintiffs, Appellees,**

v.

**PENN CENTRAL COMPANY,**
**Defendant, Appellant.**

**No. 7405.**

United States Court of Appeals
First Circuit.

Heard Dec. 3, 1969.

Decided Jan. 12, 1970.

Timothy H. Donohue, Boston, Mass., with whom O. S. Sughrue, Jr., and Sherburne, Powers & Needham, Boston, Mass., were on brief, for defendant-appellant.

Thomas B. Arnold, Boston, Mass., with whom Michael T. Prendergast, Edwin R. Trafton and Epstein, Salloway & Kaplan, Boston, Mass., were on brief, for plaintiffs-appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

On June 23, 1965, the defendant railroad's warehouse in Allston, Massachusetts, was destroyed by fire. Plaintiffs allege, inter alia, that the fire was caused by defendant's negligence and bring this action to recover for the loss of their property at the warehouse at the time of the fire.[1] The jury returned verdicts for the plaintiffs.

The warehouse, which was built in 1961, was about 450 feet long, 60 feet wide, and was divided into numerous bays and doors to permit loading and unloading of goods. The roof and siding above the loading platforms were metal and the interior floor was made of wooden planks. A wooden skirt extended all the way around the lower portion of the building. When built, the vertical planks that formed the wooden apron were flush with the ground. But as the years passed and the ground settled, gaps of from six to ten inches appeared between the ground and the bottom edges of the boards. Also, as in the case of the planks in the floor of the warehouse, there were interstices of one-half to three-quarters of an inch between the vertical planks as well as in the case of the planks in the floor of the warehouse. A chicken wire mesh had been placed inside the apron to keep animals from getting under the building, but it was testified that there were open spaces underneath the building that were "very easy for anything to go under." The building was supported by pilings impregnated with creosote.

The record shows that a certain amount of debris consisting chiefly of cardboard, used coffee cups and cartons had been allowed to accumulate near the northwesterly end of the warehouse.[2]

---

1. The complaint also contained counts for breach of contract but only the issue of defendant's liability on the negligence counts was tried to the jury. The parties agreed on the damages if the jury found for the plaintiffs.

2. The railroad blamed Sears' employees for the accumulation of rubbish, and brought the matter to their attention. Eventually an accommodation was reached regarding upkeep whereby railroad employees would provide the manpower to

About 3 p. m. on the day of the conflagration, a small trash fire broke out near a fence that bordered the warehouse at the northern end. Although the evidence was conflicting, the fire seems to have been some twelve or fifteen feet away from the warehouse. A railroad employee named McDonough, using a fire extinguisher, put out this fire in about fifteen minutes time. He testified that the flames reached a height about equal to the top of the fence, or some five to six feet. When he was satisfied that the fire was out, he reported the occurrence to his foreman who made an investigation at the scene. Neither of them made a search under the building, although McDonough testified that he looked under it. The fire department was not called.

About 5 p. m. the major fire broke out. Although details concerning the origin of this blaze are blurred, it appears that it started at the northern end of the warehouse and within a few moments the whole building was engulfed in flames.[3]

In addition to the various eyewitnesses to both fires called by the parties, plaintiffs called one John Kennedy, a fire and explosion investigator. After qualifying as an expert, he described the investigation he had conducted at the ruins of the building some three months after the fire and testified that in his opinion the improper extinguishment of the trash fire was the cause of the subsequent blaze. On cross-examination he described how, in his view, the trash fire was transmitted to the warehouse:

"A. The heat of the fire itself, the fire described here, about quarter the size of the table, the flames going up five or six feet and being hot, would generate air and heat gases of approximately over 1200 degrees Fahrenheit.

"These, being pushed by the wind, would accelerate the temperature. The strong wind was described by Mr. Earl, blowing north to south, it would be increasing the temperature.

"If the heat without any flame, one would not need flame, I cannot say whether sparks blew in or past, or paper blew in, as the boss or the foreman said they could, but the heat itself would cause the ignition of the creosote vapors, it would cause the releasing of the creosote vapors.

"Then the heat from any sparks or any other point of ignition that got in there would incubate.

"When the incubation occurs, when the incubation into the piling underneath the buildings, builds up, it continues to release heat and gases until such time, as there is enough oxygen, at which time it releases the gases, ignites them and spreads over the preheated surface.

"The description of the witnesses, that they could not outrun the fire indicates the pre-heating, of an hour or so and ties it back to the first fire.

"So this fire started before they extinguished that portion of the fire by the fence. The heating had commenced. The pre-heating of the timbers and the embers underneath, at least, and they pre-heated until such time as they got sufficient oxygen and broke out, sparks broke out. By that time, they had pre-heated the whole area so that the place blew up, as one of the witnesses said."

Defendant does not contend that, if Kennedy's testimony is allowed to stand, a finding for the plaintiff was not warranted. Its principal contention on appeal is that Kennedy's opinion regarding the cause of the fire was based on hearsay and therefore was inadmissible. It

police the area and Sears would pay for it. In picking up the rubbish, no attempt was made to go under the building to check for any rubbish that might have slipped through the wooden apron . or wire.

3. One witness testified that he observed a small bonfire under the northeast corner of the warehouse. He ran to get a fire extinguisher, but by the time he returned the fire had erupted and he could not enter the building.

points out that Kennedy admitted he had spoken to some eyewitnesses to the fire whose names he could not recall. From this, it is argued, that his opinion was not based on facts grounded in the evidence and therefore should have been stricken.[4] Our examination of the record indicates, however, that the material facts upon which Kennedy's opinion was based were all the subject of testimony by other witnesses at the trial. "[M]ere exposure to hearsay does not necessarily imply reliance thereon." Clifton v. Mangum, 366 F.2d 250, 253 (10th Cir. 1966).

Defendant also contends that the major factor in Kennedy's determination that the trash fire had caused the warehouse fire was his "assumption" that no one had made an inspection under the building after McDonough finished extinguishing it. It argues that McDonough's testimony that he looked through the slats under the building constituted an inspection and therefore Kennedy's "assumed facts" had no evidential foundation. Opinions may be given "upon facts which either are conceded or could warrantably be found upon other evidence." Lovasco v. Parkhurst Marine Ry., 322 Mass. 64, 67, 75 N.E.2d 924, 925 (1947). We think there was substantial evidence that no adequate inspection was made. Thus, Kennedy testified that sparks can lodge in wooden pilings for hours without igniting. Obviously a casual look would not have disclosed their presence. Moreover, since he stated that the fire could have been caused by heating under the building without the presence of flame, the jury could have believed simply that the improper extinguishment of the trash fire resulted in the flameless transfer of heat to the creosoted pilings and that lack of visual inspection was immaterial because it would not have disclosed a fire.

■■ Defendant next argues that it was an abuse of discretion to admit into evidence certain photographs taken by Kennedy some three months after the fire. These were irrelevant, it contends, because there was no evidence that the photographs were a fair representation of the conditions that existed at the time of the fire. But this argument overlooks the fact that earlier in the trial other photographs taken of the same area, within two weeks of the fire, were admitted and a witness indicated that these were a fair representation of the condition immediately after the fire. A comparison of the two sets of photographs shows no appreciable difference despite the time differential. Defendant's further contention that the district court erred, as a matter of law, in placing the burden on the railroad to show a change in conditions is also without merit. We think it plain that the court was satisfied from its own examination of the photographs that there was no material difference in the conditions and was merely telling the defendant that it was "entitled to show any available change" which would affect the weight and not the admissibility of the pictures.[5]

Also, we think these photographs were pertinent with respect to defendant's contention that Kennedy based his opin-

---

4. The reason for the rule excluding expert opinions based on hearsay is that, "such an opinion would or might well be founded upon facts, the truth of which could not in the nature of things be established to the satisfaction of the jury because no competent evidence respecting them would be before the jury." Commonwealth v. Russ, 232 Mass. 58, 74, 122 N.E 176, 182 (1919) ; *but see* Rules of Evidence for the United States District Courts and Magistrates, Rule 7–03 (Prelim. draft 1969).

5. *See* Mottla, Proof of Cases in Massachusetts 392 (2d ed. 1966) : "The conditions under which a photograph was taken need not be identical with those existing at the time of the occurrence in question, but it is sufficient if the trial judge determines that they were sufficiently similar, so that the photograph may be of assistance to the jury." Kennedy's photographs were of much better quality than the others and might well have been of assistance to the jury.

ion on an inspection of the premises conducted three months after the event, without showing that conditions had not changed. Specifically, the defendant is concerned that trash might have blown into the area or that rubble and ashes had shifted since the fire. Since no objection was taken to this testimony at trial, we need not consider it. In any event, as our prior discussion demonstrates, a comparison of the photographs taken shortly after the fire with those taken by Kennedy shows that no substantial changes had occurred in the physical status of the site.

 Finally, defendant objects to the trial court's refusal to give its requested instructions numbered six and seven.[6] The trial court held that requested instruction six did not inform the jury that an expert's opinion may be based in part on his experience and was thus an inaccurate statement of the law. Defendant asserts that this was a misinterpretation of the requested instruction and that there is authority for it in the case law. We need not pass on that question because, in our opinion, the instruction given with respect to expert testimony was a proper statement of the law.[7] For this reason defendant was not prejudiced.

Defendant's other requested instruction was denied by the court on the ground that there was nothing in the record to indicate that the expert's opinion was based on disbelief of anyone. The record supports that conclusion.

We have considered defendant's remaining points and find them to be without merit.

Affirmed.

---

6. "6. The opinion of an expert witness must be founded upon facts which either are conceded or could warrantably be found upon other evidence."

   "7. The opinion of an expert witness cannot be based upon disbelief of the testimony of other witnesses in the absence of other credible evidence tending to establish the opposite of such testimony."

7. The court gave the following instructions to the jury:

   "For your guidance, an expert witness is a person who, by education or experience or training, has become expert in some particular art or science or calling. He is allowed to state his opinion as to matters in which he is well versed and which are material to the case. He is allowed to state his reasons for his opinions.

   "With regard to expert opinion, I instruct you, you are not bound to accept that any more than you are bound to accept the testimony of any fact witness. You may accept it and give it such weight as you think it deserves. If you do not accept the reasons given in support of it, you are free to reject the opinions and other testimony, if you so desire."