COMMONWEALTH vs. HARRY HARRIS.

Suffolk.    February 20, 1973. — April 30, 1973.

Present: GRANT, KEVILLE, & ARMSTRONG, JJ.

*Evidence,* Opinion: expert; Judicial discretion; Impeachment of witness.

At the trial of an indictment for arson, the opinion of an investigator as an expert that two simultaneous fires in the building were independent and were incendiary was not inadmissible as hearsay, although he did not arrive at the building until after the active fires had been brought under control, and he discussed the investigation he then made and his conclusions with other investigators and firefighters there, where it appeared that his investigation comprised a long personal examination of the entire premises and that his opinion was based primarily on facts he himself observed and to which he testified [266-267]; nor was the expert's opinion that the fire was incendiary inadmissible as subject matter for the jury, or as mere conjecture, although the expert did not know the specific incendiary agent used and his opinion was based largely on the elimination of causes rather than positive evidence of incendiarism, where extensive probing eliminated any danger of relinquishment by the jury of "independent analysis of the facts" [267-272].

Lack of compliance with the procedural safeguards required by *Miranda* v. *Arizona,* 384 U. S. 436, which made a deliberate alibi statement by the defendant inadmissable in the Commonwealth's case in chief at the trial of an indictment against him did not preclude its use, after a voir dire and under principles laid down in *Harrris* v. *New York,* 401 U. S. 222, in cross-examination of the defendant to impeach his testimony on direct examination with respect to an inconsistent alibi [272-273]; a pre-trial assurance by the Commonwealth that it would not "rely upon or use" the earlier alibi statement went only to reliance and use in its case in chief [273].

INDICTMENTS found and returned in the Superior Court on October 5, 1970.

The cases were tried before *Dwyer,* J.

*Robert V. Greco* (*Robert F. Fandel* with him) for the defendant.

*John M. Lynch,* Special Assistant District Attorney (*Robert F. McKenna, Jr.,* Legal Assistant to the District Attorney, with him) for the Commonwealth.

ARMSTRONG, J.   This is an appeal under the provisions of G. L. c. 278, §§ 33A-33G, from convictions on two indictments charging (1) arson of the Congregation Agudath Israel Synagogue in Boston on the morning of May 27, 1970, and (2) breaking and entering the synagogue in the nighttime with intent to commit arson.

The defendant has presented and argued two of his assignments of error. Those assignments not argued are waived. *Commonwealth* v. *Wilson,* 357 Mass. 49, 51.

1. Over the defendant's objections, the trial judge allowed the Commonwealth to elicit an opinion by one Heggarty, a lieutenant assigned to the arson investigating squad of the Boston fire department, to the effect that there were two independent fires in the synagogue, and that they were incendiary in nature. The defendant argues that this testimony was inadmissible because it was based on hearsay; that it was not a proper subject for expert testimony; and that it was not really an opinion at all, but only conjecture.

Heggarty, whose qualifications as an expert are not at issue, testified that he arrived at the synagogue an hour and a quarter after the fire was originally reported, and after the active fire had been brought under control. He made a personal examination of the entire premises lasting three hours, and found positive evidence to indicate that there had been two separate and distinct fires. He was unable to find evidence of accelerants (e.g., gasoline, naphtha, benzine), trailers (lengths of cloth to take a fire from one place to another), or piled rags, newspapers or other debris of a combustible nature. He was also unable to find evidence of a spontaneous or accidental origin for either fire. The basis for his opinion that the fire was set was that there were two simultaneous fires neither of which could be satisfactorily explained otherwise, and "they didn't start by themselves." Heggarty testified that he had discussions with District Chief Comfrey, the senior fire department officer

at the scene, and with other fire fighters there. While Heggarty's official report categorized the fire as one of undetermined origin, this conclusion is not inconsistent with his opinion that the fire was set.

The problem with an expert opinion based upon the hearsay of others is that "[s]uch an opinion would or might well be founded upon facts, the truth of which could not in the nature of things be established to the satisfaction of the jury because no competent evidence respecting them would be before the jury." *Commonwealth* v. *Russ,* 232 Mass. 58, 74. *Commonwealth* v. *Harrison,* 342 Mass. 279, 287-288. The problem does not exist in this case.

The hearsay contention is based on Heggarty's testimony that he discussed his investigation and his conclusions with other investigators and firefighters at the scene of the fire and later, particularly with Chief Comfrey, the preceding witness for the Commonwealth. At one point in his testimony Heggarty was led into making some general statements to the effect that his opinion was partly based on his discussions with Chief Comfrey. The record indicates, however, that Heggarty himself observed the facts underlying his conclusions that there were two separate fires and that they were set. Exposure to hearsay, almost inevitable during an investigation, does not necessarily imply reliance thereon. *Clifton* v. *Mangum,* 366 F. 2d 250 (10th Cir.). See also *Sears, Roebuck & Co.* v. *Penn Central Co.* 420 F. 2d 560, 563 (1st Cir.). It is clear from the record that Heggarty's opinion was based primarily, if not exclusively, on facts he himself observed and testified to. This case, therefore, is very different from *Commonwealth* v. *Rucker,* 358 Mass. 298. Boyd, the arson investigator in the *Rucker* case, based his opinion as to the cause of the fire on facts not personally observed by him and not introduced in evidence, but learned from a conversation he had with the senior officer at the scene, Chief Connolly. Boyd admitted that his opinion was largely based on facts so learned. Connolly himself was not called as a witness, and in those circumstances Connolly's testimony was a necessary foundation to Boyd's opinion. In the present case, Heggarty supplied his

own foundation. His opinion was not inadmissible as based upon hearsay.

The defendant next contends that the question whether or not the fire was incendiary was not a proper subject for expert testimony, but on the contrary is a subject within the experience of the ordinary juror. "Where jurymen would have no difficulty in forming an opinion for themselves the testimony of an expert witness has no place. . . . On the other hand if a situation is presented on the evidence of such character or complexity that it cannot be assumed to be within the ordinary experience or knowledge of men the testimony of a qualified expert is admissible for such help as it may, if believed, give to the jury." *Jackson* v. *Anthony,* 282 Mass. 540, 544. "There is no prescribed formality for the admission of expert testimony. All that is necessary is that the subject matter be one about which special knowledge beyond that possessed by the ordinary juryman will aid the jury in their deliberations, and that a person possessing such knowledge give opinions pertinent to the issues of the case founded upon facts which either are conceded or could warrantably be found upon other evidence." *Lovasco* v. *Parkhurst Marine Ry.* 322 Mass. 64, 67. *Commonwealth* v. *Makarewicz,* 333 Mass. 575, 591-592. *Commonwealth* v. *Boyle,* 346 Mass. 1, 4.

The opinion of a properly qualified person concerning the cause of a fire is generally admissible in evidence. *Edward Rose Co.* v. *Globe & Rutgers Fire Insurance Co.* 262 Mass. 469, 472. *Gechijian* v. *Richmond Insurance Co.* 305 Mass. 132, 142. *Commonwealth* v. *Reynolds,* 338 Mass. 130, 134. *Sheldon Forwarding Co.* v. *Boston & Maine R.R.* 339 Mass. 679, 683-684. *Kenney* v. *Sears, Roebuck & Co.* 355 Mass. 604, 606-608. *McLaughlin* v. *Bernstein,* 356 Mass. 219, 222-224. *M. C. Carlisle & Co. Inc.* v. *Cross,* 386 F. 2d 672, 676 (1st Cir.).

The defendant, however, relies on two older cases in which expert testimony concerning fire was excluded. In the first, *Higgins* v. *Dewey,* 107 Mass. 494, the trial judge excluded an opinion by one Wells that it was not probable that a brush fire set by the defendant on a windy day would

.cause live cinders to blow onto the plaintiff's property the boundary of which lay six feet downwind. The exclusion was sustained, not only because the opinion was immaterial, since the defendant was liable for damages caused by the spread of the fire whether it was probable or not, but also because it related "to a subject within the common knowledge of the jury." That case does not control the one before us. The causes of fires in buildings are less familiar to today's urbanized population than were the habits and dangers of brushfires to an agrarian population more than one hundred years ago.

Of more concern is *Commonwealth* v. *Rodziewicz,* 213 Mass. 68, in which a member of the State police who had had large experience in investigating fires was permitted to testify "as to the kind of fire which would produce" separate charred areas at six different locations along the floor, mop-board, and partitions. He testified that "something of a very intense nature must have been on these particular places to have set there and burned through this floor." Reversing the defendant's conviction for arson, Loring, J., stated: "Doubtless there are cases where the effect of some kinds of fire upon some kinds of material substance is not a matter of ordinary experience or knowledge such as men in general understand and comprehend. But the kind of fire or fires which char ordinary mopboards, sheathing and partitions and burn holes through an ordinary wooden floor without any charring or burning between is not one of them." 213 Mass. at 69-70. The question and answer held improper in the *Rodziewicz* case differed from the customary inquiry as to the cause of a fire, which in its nature calls for the consideration of many factors in combination, and often involves a complex of judgments outside the scope of ordinary experience. On its face the *Rodziewicz* case holds only that a jury does not require and should not receive the opinion of an expert to assist it in drawing the conclusion that char marks in boards must have been caused by something hot.[1] Exam-

---

[1] The doctrine of harmless error appears to have been applied very restrictively

ination of the original papers shows that Rodziewicz also argued that it was error to permit the same witness to state his opinion that there were six separate fires. Although the case might have been retried, the court did not suggest that this opinion was improperly admitted, perhaps because no matter how simple a conclusion it seems superficially, the possibilities implicitly excluded might be complex.

*Commonwealth* v. *Rodziewicz* has been cited and argued by litigants, in such cases as *Gechijian* v. *Richmond Insurance Co.* 305 Mass. 132, and *Commonwealth* v. *Reynolds,* 338 Mass. 130, in an attempt to exclude expert opinion as to the cause of fire. It has not been given that effect in any case we have found (cf. *Bradford* v. *Boston & Maine R.R.* 225 Mass. 129, 135); indeed, in the two cases referred to, the court did not even deem it necessary to address itself to the argument. And in the recent case discussed above, *Commonwealth* v. *Rucker,* 358 Mass. 298, although the expert's opinion as to the cause of the fire was held inadmissible because based on hearsay, the court expressly suggested that the defect could be cured on retrial by introducing first-hand testimony of the facts upon which the expert predicated his opinion, and did not suggest that the opinion as to cause suffered from any other infirmity.

Nor do we feel that the statements elicited from Heggarty that he did not know the cause of the fire revealed that his opinion was mere conjecture. Read in context, he seems to be saying only that he does not know the specific incendiary agent used. This testimony goes only to the weight to be accorded his opinion, not to its admissibility. Nor do we feel that Heggarty's opinion should be treated not as an opinion, but as conjecture, because it is based largely on elimination rather than positive evidence of incendiarism. It is not like the conjecture of the fire chief in

---

at the time. See, e.g., *Commonwealth* v. *White,* 162 Mass. 403, 405, and *Akeson* v. *Doidge,* 225 Mass. 574, 575, both cited in Wigmore, Evidence (3d ed.) § 21, fn. 17, p. 384, as examples of undue strictness in reversing for trivial errors, and Note, The Harmless Error Rule Reviewed, 47 Colum. L. Rev. 450, at 450.

*Brownhill* v. *Kivlin,* 317 Mass. 168, that careless cigarette smoking caused an automobile fire. In that case the fire chief had little basis to support an opinion so particularized; in the case before us, the opinion is more general and the basis more suggestive. As an abstract proposition it would seem possible for an arsonist to employ a causative agent which would be wholly consumed in the fire he set, and nevertheless for an experienced investigator reasonably to infer incendiary origin from systematic elimination of other possibilities. That further inferences as to details may be deemed unwarranted conjecture, and inadmissible, only illustrates that the distinction between what is reasonable and what is not is one of degree and not of kind.

Our Supreme Judicial Court has recently stated "that a question which calls for an opinion which is in the domain of the expert's professional knowledge is not necessarily to be excluded merely because the conclusion of the witness reaches or approaches the ultimate issue before the jury." *Commonwealth* v. *Montmeny,* 360 Mass. 526, 527-528. It is doubtless also true that a trial judge should exercise caution with respect to such opinions because of the danger that the jury might abdicate its independent judgment. But in safeguarding the integrity of the jury process, the trial judge must be accorded broad discretion. In the case before us, Heggarty's opinion as to the incendiary cause of the fire was admitted before it became apparent that his opinion was based not on positive evidence of incendiarism, but on his subsidiary conclusions as to the multiplicity of fires and the improbability of other causes. When the basis for the opinion became apparent, the trial judge might have allowed the motion to strike the ultimate opinion, and instructed the jury not to take it into account in arriving at its own conclusions. We cannot say he was required to do so, nor do we feel he should have done so. He may well have felt that to strike the ultimate opinion at that point would be of little practical value to the defendant and could only disrupt the orderly flow of the trial. What he did do was to allow broad latitude in probing into the basis for Heggarty's opinion in repeated recross and redirect examinations. This

unusually extensive probing laid bare the strengths and weaknesses of the basis for the opinion, and had the effect of whittling it down in size. After careful consideration of Heggarty's entire testimony, we are of the opinion that the danger had been satisfactorily eliminated that "the jury might forego independent analysis of the facts and bow too readily to the opinion of an expert...." McCormick, Evidence (2d ed.) § 12, p. 27.

2. The second assignment of error argued by the defendant is directed towards the prosecution's use, while cross-examining the defendant, of a prior inconsistent statement for impeachment purposes. The prior statement, made by the defendant to the police in the dock of the Dorchester District Court just before his arraignment, was an alibi inconsistent with an alibi later used by the defendant in his direct testimony. The trial judge in the Superior Court, after a voir dire, ruled that the prior inconsistent statement, although inadmissible in the prosecution's case in chief because of lack of compliance with the procedural safeguards required by *Miranda* v. *Arizona,* 384 U. S. 436, could be used in cross-examination for impeachment purposes under the principles laid down in *Harris* v. *New York,* 401 U. S. 222.

The defendant attempts to distinguish between *Harris* v. *New York* and the present case on the basis that in the *Harris* case the petitioner made "no claim that the statements made to the police were coerced or involuntary," 401 U. S. at 224; whereas in the present case the "trial court made no finding as to the voluntariness of the defendant's statements ...." The trial judge was under no obligation to make a finding on this issue, because no one raised the issue before him. Nor would any evidence taken at the voir dire have supported a finding of involuntariness. This issue may not be raised for the first time on appeal. Furthermore, any theory of coercion or involuntariness was effectively negated by the defendant in his later testimony before the jury. It appears from his own testimony that his first alibi was worked out deliberately and privately with a friend

who was to corroborate it when approached. See *Commonwealth* v. *Pratt,* 360 Mass. 708, 714.

The defendant also argues that the prosecution's use of the earlier alibi in cross-examination violated an earlier assurance by the Commonwealth that it would not "rely upon or use" the alibi. We agree with the conclusion reached by the trial judge that the Commonwealth's assurance went only to reliance upon and use of the defendant's alibi statement in the Commonwealth's case in chief. We do not agree with the defendant's argument that because *Harris* v. *New York* had not been decided or even argued at the time the prosecution could not have contemplated a distinction between using the statement in its case in chief and using it for impeachment.[2] It seems more probable that the attorneys for the Commonwealth and the defendant were only addressing themselves to the evidence the Commonwealth would introduce in its own case. At that time the defendant's first alibi was of little or no significance to the Commonwealth's case; only when the defendant uttered his second alibi at the trial did the first alibi statement become significant. Something more certain than what appears here would be required to convince us that the Commonwealth intended to bargain away its ability to meet the case for the defence as it developed.

*Judgment affirmed.*

---

[2] Four State Courts had previously taken the position later vindicated by the United States Supreme Court; *People* v. *Kulis,* 18 N. Y. 2d 318; *State* v. *Kimbrough,* 109 N. J. Super. 57; *State* v. *Butler,* 19 Ohio St. 2d 55; *State* v. *Grant,* 77 Wash. 2d 47. The possibility was also considered in commentaries: 20 Syracuse L. Rev. 494, 500; 36 Brooklyn L. Rev. 41, 44-45; 35 Fordham L. Rev. 723; 13 N. Y. L. Forum 146.