Commonwealth *vs.* Charles H. Roy.

Suffolk.    January 14, 1974. — March 11, 1974.

Present: Hale, C.J., Rose, Grant, & Armstrong, JJ.

*Evidence,* Admissions and confessions; Opinion: expert; Judicial dis-
cretion.    *Constitutional Law,* Admissions and confessions, Waiver
of constitutional rights.    *Waiver.    Witness,* Expert witness.

An inculpatory statement voluntarily made by a bystander at the
scene of a fire to a police officer who immediately arrested him for
arson was admissible in a criminal proceeding against him for that
offense.    [17-18]

Where it appeared in a criminal proceeding for arson that the de-
fendant, while in custody, was not completely advised of his
*Miranda* rights, that he did not answer when asked by a police
officer if he understood what was said to him and if he wished to
talk about the case, but that he then answered questions by the of-
ficer as to the fire involved and in so doing inculpated himself, it
was held that there was no valid waiver of his constitutional rights
and that, on a pre-trial motion by him, it was error not to sup-
press the statements made to the officer [17-20]; but that such
statements were merely cumulative in view of statements made by
the defendant to other police officers and that the error was harm-
less [21].

Where, on a pre-trial motion to suppress in a criminal case, it appeared
that the defendant, while in custody, submitted to an interview by
a police officer in which, after inculpating himself, he indicated
that he did not wish to be questioned further, that the judge ruled
that anything he said thereafter should be suppressed, and that the
evidence warranted findings by the judge that the defendant, with
full knowledge of his constitutional rights, voluntarily and intelli-
gently waived them as to the portion of the interview occurring
prior to his indication of such wish, there was no error in a denial
of the motion as to such prior portion of the interview.    [17-21]

No error appeared in a criminal case in a determination by the judge that a physician called as a defense witness, who testified he was in his third year of resident training in psychiatry at a medical center, was not qualified to give a psychiatric diagnosis of the defendant, or in exclusion of such diagnosis. [21-22]

Exclusion in a criminal case of a question to a social worker at a medical center for alcoholics whether she had formed an opinion that the defendant was an alcoholic was not error where she had already testified without objection that he was an alcoholic and that she had counseled him as such [22-23]; nor was there error in excluding a question calling for her opinion as to his "mental status" [23].

No error appeared in an arson case in a determination by the judge that a member of an arson squad was qualified as an expert to give an opinion as to the origin of the fire involved in the case. [23-24]

INDICTMENTS found and returned in the Superior Court on February 8, 1972.

A motion to suppress was heard by *Connolly, J.*, and the cases were tried before him.

*Kay H. Hodge* for the defendant.

*Louis M. Nordlinger*, Assistant District Attorney, for the Commonwealth.

HALE, C.J. At a jury trial held subject to the provisions of G. L. c. 278, §§ 33A-33G, on indictments charging arson and murder (in the second degree), the defendant was convicted of arson and manslaughter, and sentenced. He has briefed and argued several assignments of error concerning: (1) the partial denial of his pre-trial motion to suppress certain statements made by him after his arrest; (2) the exclusion of certain testimony offered by him at the hearing on the pre-trial motion and at trial; (3) the ruling by the judge at the pre-trial hearing that a Commonwealth witness was properly qualified to testify as an expert witness.

We summarize the pertinent evidence elicited at both the pre-trial hearing and at trial. On the evening of January 8, 1972, members of the Boston fire department responded to a fire in a basement apartment at 28 Isabella

Street.   A police officer who arrived at the scene was
directed by one of the firemen to speak with the defend-
ant, who was standing alone on a traffic island located
nearby.   The officer approached the defendant and
"asked him if he lived down there."   The defendant
answered, "Yes."   The officer then asked what had hap-
pened, and the defendant responded, "We were fighting
and throwing things around, so I set the curtains on
fire."   The officer immediately informed the defendant
that he was under arrest for arson and, accompanied by
another officer, proceeded to transport the defendant to a
police station.   The body of the deceased, who was the
defendant's roommate, was discovered inside the apart-
ment by the firemen.   That fact was apparently com-
municated to the arresting officer during the ride to
the station, but the officer did not so inform the defend-
ant.   During that ride the defendant repeatedly asked
about his "friend."   The officers responded equivocally.
The arresting officer testified at the pre-trial hearing that
the defendant appeared to have been drinking but that
his speech was coherent.

Upon arrival at the police station the defendant was
taken to the "booking desk."   There he was first in-
formed of his *Miranda* rights (*Miranda* v. *Arizona*, 384
U. S. 436 [1966]).   The defendant made no response to
the reading of his rights, nor did he sign a form
indicating a waiver of such rights.   Shortly thereafter
Officer Lloyd Langill, a member of the arson squad,
arrived at the station house to question the defendant.
Officer Langill testified at the pre-trial hearing that he
advised the defendant orally of most of his *Miranda*
rights, and that the defendant gave no response when
asked if he understood what was said to him and if he
wished to talk about the case.   The officer then ques-
tioned the defendant briefly about the fire, and each
question was answered.   He admitted having set fire to
the curtains.

When Officer Langill finished questioning the defendant, Sergeant Detective Whalen of the Boston police department homicide unit again informed the defendant of his *Miranda* rights, one by one, reading them to him from a printed card. He asked the defendant after each right was read, "Do you understand that?" Each time the defendant answered, "Yes." He also informed the defendant that he was being charged with murder and arson. He thereupon proceeded to tape record the interview with the defendant. At one point during the interview, after having admitted starting the fire, the defendant indicated that he did not wish to be questioned further.

At the pre-trial hearing and at trial, the defendant offered the testimony of two physicians and a social worker to the effect that during late 1971 the defendant had undergone treatment for problems related to alcoholism and that Thorazine, a major tranquilizing drug, had been prescribed. The defendant testified only at trial.

1. The judge filed findings and rulings on the defendant's motion to suppress. He denied the motion as to the statements made to the arresting officer and to Officer Langill. As to the statements made to Sergeant Whalen, he ruled that "when the defendant stated that he did not want to talk any more, he was exercising a constitutional right he had under the *Miranda* case, and nothing he said after that at the interrogation is admissible in evidence. What he said prior to his statement that he did not want to talk any more is admissible."

The defendant argues that his motion to suppress should have been granted as to statements made to Officer Langill and Sergeant Whalen because (1) there was no evidence on the record of an affirmative waiver of *Miranda* rights; (2) there was no evidence of a knowing and intelligent waiver; and (3) the Commonwealth failed to meet its burden of proving the validity of the alleged waiver.

We note at the, outset that the defendant does not maintain that his statement to the arresting officer at the scene of the fire ("We were fighting and throwing things around, so I set the curtains on fire") is inadmissible. Inculpatory statements such as these, voluntarily made long before the onset of "custodial interrogation," are clearly admissible. *Miranda* v. *Arizona,* 384 U. S. 436, 477-479 (1966). *Hicks* v. *United States,* 382 F. 2d 158 (D. C. Cir. 1967). *Commonwealth* v. *Cutler,* 356 Mass. 245, 246-247 (1969).

With respect to the statements made to Officer Langill of the arson squad, however, we must agree with the defendant. The judge's finding that "the defendant was completely advised of his rights under the *Miranda* case and understood those rights" lacks support in the record before us.[1] As the *Miranda* case makes clear, a valid waiver cannot be presumed from a silent record. *Miranda* v. *Arizona,* 384 U. S. at 475, citing *Carnley* v. *Cochran,* 369 U. S. 506, 516 (1962). However, in the circumstances of this case, for reasons which we discuss later, we are not prepared to say that the judge's ruling constituted reversible error.

With respect to the statements made to Sergeant Whalen of the homicide unit, our opinion is that the Commonwealth has clearly demonstrated a constitutionally permissible waiver. The criterion which the prosecution must meet in such situations is that of a preponderance of the evidence. *Lego* v. *Twomey,* 404 U. S. 477 (1972). See *Commonwealth* v. *White,* 353 Mass. 409, 423, n. 3 (1967). There is no clear-cut test which can be applied uniformly to all such cases; the circum-

---

[1] It would appear from Officer Langill's testimony at the pre-trial hearing that the *Miranda* warning was not fully administered in that the warning as to the right to have counsel appointed was omitted. Officer Langill testified at trial that he advised the defendant of all the *Miranda* rights, including the right to have counsel appointed. Our consideration of the adequacy of the warnings must be limited to the evidence adduced at the pre-trial hearing.

stances of each case must be examined carefully to determine whether or not a defendant knowingly and intelligently chose to waive his rights.

The trial judge had before him at the pre-trial hearing the uncontradicted testimony of Sergeant Whalen that the *Miranda* warnings were fully given, that the defendant stated that he understood them, that the defendant was informed of the charges against him, and that the defendant was willing to make a statement. Other testimony established that the defendant, who was talkative from the outset, was not misled or coerced by the interrogating officers, was not subjected to lengthy or brutal interrogation, was not incoherent, and was of sufficient maturity and intelligence to understand his position.[2] The trial judge is in a far better position to determine the existence of a knowing, intelligent and voluntary waiver than is an appellate court; his findings are entitled to "substantial deference." *United States* v. *Springer,* 460 F. 2d 1344, 1348 (7th Cir. 1972). His finding that the part of the statement made to Sergeant Whalen, which was admitted "was made voluntarily by the defendant who understood his constitutional rights and knowingly

---

[2] Contrast such cases as the following in which no valid waiver was found: *Eisen* v. *Picard,* 452 F. 2d 860 (1st Cir. 1971) (defendant insane when statements made); *United States ex rel. Collins* v. *Maroney,* 287 F. Supp. 420 (E.D. Pa. 1968) (defendant, known to police as heavy narcotics user, exhibited symptoms of withdrawal from addiction when statements made); *Schenk* v. *Ellsworth,* 293 F. Supp. 26 (D. Mont. 1968) (defendant not informed of charges pending, asked interrogator if he thought he needed a lawyer); *United States* v. *Bird,* 293 F. Supp. 1265 (D. Mont. 1968) (poorly educated defendant, interrogated several times, oral admission obtained two hours after defendant expressed desire to terminate interrogation); *United States* v. *Blocker,* 354 F. Supp. 1195 (D. D. C. 1973) (twenty-year-old defendant with low I.Q.); *Commonwealth* v. *McKenna,* 355 Mass. 313 (1969) (defendants' lawyers present at station house during interrogations, but not permitted to see defendants); *Commonwealth* v. *Cain,* 361 Mass. 224 (1972) (fifteen-year-old; defendant's father not permitted to see defendant during questioning).

and intelligently waived them" was fully supported by the evidence.

The absence of a written waiver is not crucial if, as here, it can be found that in the circumstances a knowing and intelligent waiver took place. *United States* v. *Stuckey*, 441 F. 2d 1104 (3d Cir. 1971). *United States* v. *Potter*, 360 F. Supp. 68 (E. D. La. 1973). See *Pettyjohn* v. *United States*, 419 F. 2d 651 (D. C. Cir. 1969). Similarly, if during the course of the interrogation the accused invokes his right to terminate the questioning, it does not follow that, prior to such invocation, the accused could not have been exercising a waiver knowingly and intelligently. See *United States* v. *Alexander*, 441 F. 2d 403, 404 (3d Cir. 1971) ("The fact that [the accused] refused to make any further statements after making the confession is consistent with such a knowing and voluntary waiver.").

The defendant suggests that he may have been incapable of making a knowing and intelligent waiver as there was evidence that he had been drinking during the day of the fire. Much of the evidence on that point, however, was introduced at trial and not at the pre-trial hearing on the motion to suppress. Compare *Eisen* v. *Picard*, 452 F. 2d 860, 864 (1st Cir. 1971). The defendant offered no testimony at the pre-trial hearing to show his lack of capacity on the evening of January 8, other than the observation of the arresting officer that he "appeared to be drinking."[3] It cannot be said that the defendant's appearance or behavior was such that his interrogators should have discerned and the judge should have found that he could not comprehend the significance of his actions. Compare *Pea* v. *United States*, 397 F. 2d 627 (D. C. Cir. 1967). See *United States* v. *Young*, 355 F. Supp. 103, 108 (E. D. Pa. 1973). The defendant

---

[3] Officer Langill and Sergeant Whalen both testified that they were unable to form an opinion as to whether the defendant had been drinking.

made no request for medical attention, nor did he indicate any mental or physical ailment. Compare *United States* v. *Watson*, 469 F. 2d 362 (5th Cir. 1972). The judge found that the defendant, though upset "was rational and competent to knowingly and intelligently waive the constitutional rights in question, and did waive those rights." We are satisfied that the record in this case shows "'with unmistakable clarity' that the trial judge considered whether the statements were 'the product of a rational intellect.'" *Commonwealth* v. *Masskow*, 362 Mass. 662, 667 (1972).

We conclude that the trial judge's rulings on the admissibility of the defendant's statements to the arresting officer and to Sergeant Whalen were correct. His ruling on the admissibility of the statements to Officer Langill, although in our view incorrect, does not require reversal. In view of the evidence that the interrogations were brief and neither physically nor psychologically coercive, and that the defendant provided no significant details in his statement to Officer Langill that were not related in the other two statements, we think this case is a proper one for the application of the harmless constitutional error standard enunciated by the United States Supreme Court in *Chapman* v. *California*, 386 U.S. 18, 21-24 (1967), and in *Milton* v. *Wainwright*, 407 U.S. 371, 372-373 (1972). The statements made to Officer Langill were entirely cumulative, and we are satisfied beyond a reasonable doubt that the error in admitting them was harmless.

2. The defendant assigns as error the exclusion of testimony at the pre-trial hearing and at trial of two witnesses, a physician and a social worker.

a. *Testimony of the Physician.*

A physician, called as a witness by counsel for the defendant, testified at the pre-trial hearing that he was in his third year of resident training in psychiatry at the Boston University Medical Center; he described his qualifications in detail. He testified that he had seen the

defendant once, on the evening of December 31, 1971, when the defendant had been brought to the hospital by a clergyman.   The witness was unable to conclude that the defendant had been drinking, but he did make a psychiatric diagnosis of the defendant.   His testimony as to his diagnosis was excluded at the pre-trial hearing as well as at trial.   In each instance the defendant saved an exception.   The defendant made an offer of proof that the doctor would have testified that the diagnosis was one "of acute borderline psychotic episode in the [morning], and chronic mixed characterological pathology."   The judge stated at the hearing that he did not find the witness qualified.   The witness was permitted to testify that he had recommended that the defendant be committed to Boston State Hospital.

It is well settled that it is the duty of the trial judge to determine whether an expert witness is properly qualified. *Commonwealth* v. *Spencer*, 212 Mass. 438, 447-448 (1912).   *Louise Caroline Nursing Home, Inc.* v. *Dix Constr. Corp.* 362 Mass. 306, 309 (1972).   His decision is conclusive unless, upon the evidence, it is erroneous in law.   *Commonwealth* v. *Capalbo*, 308 Mass. 376, 380 (1941).   We conclude that his decision was not erroneous in law.   Nor do we conclude that this was a situation in which the judge "wholly exclude[d] expert testimony because of serious misunderstanding of the issues of fact upon which such expert testimony is offered" or "fail[ed] to perceive the relevance of the offered testimony."   See *Commonwealth* v. *Banuchi*, 335 Mass. 649, 655 (1957). The judge's findings indicate his complete awareness of the issues involved and of the relationship which the proffered testimony bore to them.

b. *Testimony of the Social Worker.*

A social worker at the South End Medical Center for Alcoholics was also called as a witness for the defense. She testified that she had first seen the defendant three years earlier, when he had been referred to the Center. She testified that the defendant was an alcoholic when he

came to the Center and that she counseled him "as an alcoholic" during the year 1971. She also testified as to the defendant's behavior and emotional state when he appeared to be under the influence of alcohol. She stated that she last saw the defendant on January 3, 1972, five days before the fire, and that at that time he was under the influence of alcohol and drugs. She was not permitted to testify whether, in the course of counseling the defendant, she had formed an opinion that he was an alcoholic. The defendant's exception was saved. The witness had already testified, without objection, that the defendant was an alcoholic, and that she had counseled him as an alcoholic. Thus, the substance of the proffered testimony had already been conveyed to the jury. Our opinion is that the question was properly excluded.

At the pre-trial hearing this witness was not permitted to answer a question calling for her opinion of the defendant's "mental status" at a time shortly before the fire. That vague question called upon the witness to give an expert's opinion and, for the reasons stated above concerning the physician's testimony, was properly excluded.

3. The defendant assigns as error the determination by the trial judge at the pre-trial hearing that Officer Langill of the arson squad "was qualified as an expert to give an opinion concerning the origin of the fire." We reiterate that the determination of whether an expert is properly qualified is for the trial judge to make and that his decision is ordinarily conclusive unless erroneous in law. *Commonwealth* v. *Spencer, supra.* "The conclusion of the trial judge that a witness is competent to express an opinion upon a particular matter can be disturbed only where there is no evidence to warrant that conclusion." *Commonwealth* v. *Bellino,* 320 Mass. 635, 638 (1947). We shall not disturb the trial judge's conclusion on this matter.

*Commonwealth* v. *Rucker,* 358 Mass. 298 (1970), cited in the defendant's brief, is distinguishable on its facts. In

the *Rucker* case, the arson investigator's conclusions were based on facts not observed by him but related to him by another fireman. In the instant case Officer Langill's conclusions, though based in part on the statements of the defendant to him, were also based on his personal observations at the scene of the fire. See *Commonwealth v. Harris*, 1 Mass. App. Ct. 265, 267-268 (1973), S. C. 364 Mass. 236 (1973).

*Judgments affirmed.*