COMMONWEALTH *vs.* WILLIAM SIRES, JR.

Berkshire.    April 5, 1976. — June 23, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Homicide. Evidence,* Admissions and confessions, Of mentality. *Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Waiver. Witness,* Competency. *Insanity. Practice, Criminal,* New trial, Charge to jury, Capital case.

Evidence that the defendant in a murder trial appeared to be sober at the time of his arrest, that, after being given the Miranda warnings, he signed a waiver of his rights and gave a statement, and that he had not been coerced or subjected to lengthy interrogation by the investigating officers warranted a finding that the defendant validly waived his privilege against self-incrimination and his right to counsel. [543-545]

The fact that one of the jurors in a murder trial was distantly related to the defendant and the victim did not require the allowance of a new trial where the relationship was unknown to both the juror and the defendant until after the trial. [545-546]

At a murder trial, there was no abuse of discretion in admitting the testimony of the defendant's sister who had been institutionalized for alcoholism and under medication for hallucination and loss of memory. [546]

At a murder trial it was not open to the defendant to show that as a result of mental disease he was incapable of deliberate premeditation because that defense is not recognized in this Commonwealth. [546-547]

At a murder trial, where the judge instructed the jury on murder in the first and second degree and on manslaughter, it was not error for the judge, in response to the jury's questions concerning the difference between first and second degree murder and the definition of intoxication, to reinstruct the jury on first and second degree murder and not on manslaughter. [547]

At a murder trial, the judge was correct in submitting to the jury the question whether the defendant was so overcome by alcohol that he was incapable of deliberate premeditation. [547]

INDICTMENT found and returned in the Superior Court on October 4, 1973.

A pre-trial motion to suppress evidence was heard by *Cross,* J., and the case was tried before him.

*Thomas J. O'Connor* for the defendant.

*John T. McDonough,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. This is an appeal under the provisions of G. L. c. 278, §§ 33A-33G, from a conviction of murder in the first degree following a jury trial in Superior Court in Berkshire County. The defendant argues several assignments of error concerning: (1) the denial of his pretrial motion to suppress certain inculpatory statements made by him after his arrest; (2) the denial of his motion for a new trial; (3) the competency of the defendant's sister to testify; (4) the judge's ruling excluding evidence relating to the defendant's mental state; (5) the judge's instructions to the jury; and (6) the denial of his motion for a directed verdict. We conclude that there was no error of law, and we are unpersuaded to exercise our power under § 33E in favor of the defendant.

The evidence at the voir dire and before the jury showed that the defendant's mother, Anna Sires, had been shot to death on September 5, 1973. The three bullets taken from her body matched those test-fired from a gun seized by police from the defendant.

The events preceding Mrs. Sires's death were described by the defendant and his coworker, Harry Johnson. Johnson and the defendant left Lenox, Massachusetts, on the morning of September 5, 1973, to drive a friend to Putney, Vermont. Johnson and the defendant split a six-pack of beer on the trip north and on their return journey that afternoon they continued drinking and made several stops at bars en route to Dalton, Massachusetts. They arrived at the Sires home in Dalton about 4:30 P.M. and, during a brief stay there, Johnson overheard the defendant arguing with his mother about his playing the stereo too loudly.

From Dalton, Johnson and the defendant went to several bars in Pittsfield to drink beer and whiskey and to play pool. The defendant dropped Johnson off in Lenox about 8:15 P.M. Johnson testified that, although the defend-

ant was "feeling it," he appeared to be sober while playing pool at 6:30 P.M. and that he was driving competently and speaking coherently.

After leaving Johnson, the defendant testified that he continued his drinking binge until he returned home at approximately 10 P.M. He took a loaded gun from his car and proceeded to his mother's room where he shot her three times.

The defendant was arrested the following morning at approximately 6:30 A.M. in Hoosick Falls, New York. The police found the murder weapon in the defendant's car. The defendant was taken to a justice of the peace's office where, after being informed of his rights and signing a waiver, he confessed to shooting his mother and admitted that he had been arguing with her for the last week. On the ride back to Massachusetts with State police officers, the defendant, after again receiving notice of his rights and signing a waiver, recounted the events of the preceding day.

The defendant's sister testified that she was awakened when her brother returned home on the night of September 5, 1973, and that she heard him saying, "I'll fix you, you gray-haired [profanity]." Thereupon, she heard several shots, saw her brother leaving in his car, and found her mother face down on her bed. The defendant's father testified that when he talked to his son in jail, the defendant said that he did not know why he had killed his mother, but that he had been drinking and that he had argued with his mother about her refusal to lend him money.

1. The defendant argues on appeal that the statements he made while in custody in Hoosick Falls should have been suppressed. There is no question that he was informed of his Miranda rights (*Miranda* v. *Arizona*, 384 U.S. 436 [1966]), but it is the defendant's contention that his tired and intoxicated condition was such as to render his waiver ineffective. The trial judge, following a voir dire hearing, made subsidiary findings of fact from which he concluded that, despite the fact that the defendant was tired and not feeling well, he was sober, not confused and

understood his rights.[1] Having examined the totality of circumstances leading up to the waiver, including the conduct and the characteristics of the accused and the details of the interrogation, *Commonwealth* v. *Daniels,* 366 Mass. 601, 606 (1975); *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 226 (1973), we hold that there was ample evidence to support the judge's conclusion that the defendant validly waived his privilege against self-incrimination and his right to counsel.[2]

While we recognize that a waiver is void if a person is intoxicated to the point that he cannot understand his constitutional rights, see *Commonwealth* v. *Hosey, supra,* that is not the case before us.[3] At the voir dire hearing, there was uncontradicted testimony by several police officers that the defendant appeared to be sober, his speech was unimpaired, and he walked normally. The defendant was given his Miranda warnings, informed that he was under arrest on a fugitive from justice warrant from Massachusetts for shooting his mother,[4] and asked if he under-

---

[1] We accept, as we must, the trial judge's resolution of conflicting testimony and we do not disturb his subsidiary findings if warranted by the evidence, but the ultimate findings and legal conclusions, particularly those of constitutional implications, are open for independent review on appeal. *Commonwealth* v. *Murphy,* 362 Mass. 542, 550-551 (1972) (Hennessey, J., concurring).

[2] The standard for determining if a defendant has waived his rights was set forth by the Supreme Court in *Miranda*: "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.... This Court has always set high standards of proof for the waiver of constitutional rights, *Johnson* v. *Zerbst,* 304 U.S. 458 (1938), and we reassert these standards as applied to in-custody interrogation." 384 U.S. at 475. See *Commonwealth* v. *Hosey,* 368 Mass. 571, 576, 577 n.2 (1975); *Commonwealth* v. *Cain,* 361 Mass. 224, 227-228 (1972).

[3] In *Hosey,* unlike the present case, the defendant was arrested on a charge of drunkenness. He appeared to the officers to be "extremely emotional" and "abnormal," and he had trouble walking and speaking clearly. *Id.* at 575.

[4] We do not believe that it is significant that, at the time of the interrogation in Hoosick Falls, neither the police nor the defendant knew that Mrs. Sires had died as a result of the gunshot wounds. Since the

stood his rights and if he wanted a lawyer. The defendant replied that he understood his rights, did not want a lawyer, and wished to tell them what had happened. The defendant then signed a waiver and gave a statement. See *Miranda* v. *Arizona, supra* at 475. Furthermore, although the defendant had been drinking heavily on September 5, 1973, the judge found that the defendant had consumed only one and one-half cans of beer during the nine-hour period between the shooting at 10 P.M. and his giving a statement to the police at 7:25 A.M. on the morning of September 6, 1973.

We also note that the testimony on voir dire establishes that the defendant was not misled or coerced by the interrogating officers nor was he subjected to a lengthy interrogation. Although he was tired as a result of lack of sleep, the defendant willingly gave the police what appears to be a coherent narrative of the events of the prior day. In addition, the defendant, who is thirty-two years old (compare *Commonwealth* v. *Cain, supra*) and has completed one semester in college (compare *Commonwealth* v. *Daniels*, 366 Mass. 601 [1975]), has the capacity intelligently to waive his rights. Accordingly, we conclude that the Commonwealth has sustained its burden, see note 2 *supra*, of showing a constitutionally permissible waiver. See *Commonwealth* v. *Rogers*, 351 Mass. 522 (1967); *Commonwealth* v. *Roy*, 2 Mass. App. Ct. 14 (1974).

2. The defendant next contends that the trial judge erred in denying his motion for a new trial. He asserts that he was deprived of his right to an impartial jury, because, as it was learned after the trial, one of the jurors is related to the victim and to the defendant.[5] The defendant's claim is without merit, for we do not believe that the juror's judgment could have been affected by a circumstance of

---

defendant testified that he was aware that the charge involved the shooting of his mother, we are of opinion that he was sufficiently informed to be able to waive his rights in a knowing and intelligent manner.

[5] It was established after the trial that the defendant and the juror were related through their grandparents.

which she had no knowledge, since the distant relationship was unknown to both during the trial.

The situation in this case is analogous to that in *Commonwealth* v. *Delle Chiaie*, 323 Mass. 615 (1949), where it was not learned until after the trial that one of the jurors was, it was assumed, disqualified under State law. In *Delle Chiaie*, this court, quoting from *Commonwealth* v. *Wong Chung*, 186 Mass. 231, 237-238 (1904), stated: "If ... it is discovered after a verdict that a disqualified person has joined in the decision, the interests of justice require that the irregularity or accident shall be treated like other irregularities. ... If in the opinion of the presiding judge, the disqualification of a juror has operated injuriously, and has tended to the return of an erroneous verdict, or has otherwise worked injustice, a new trial should be granted." 323 Mass. at 618-619. Finding no injustice to the defendant, the court sustained the denial of the motion for a new trial. *Id.* at 619.

Following the reasoning of *Delle Chiaie*, we find that the trial judge did not abuse his discretion in refusing to grant a new trial, see *Commonwealth* v. *Kelley*, *ante*, 147, 152 (1976), for, under the circumstances, it cannot be said that the presence of a disqualified juror affected the defendant adversely.

3. The defendant claims that his sister, a key prosecution witness, should not have been permitted to testify, because she had recently been institutionalized for alcoholism and had been under medication for hallucinations and loss of memory. It is well settled that the question of the competency of a witness to testify is solely for sound discretion of the judge. *Slototski* v. *Boston Elevated Ry.*, 215 Mass. 318, 320 (1913). An insane person is not necessarily an incompetent witness. *Commonwealth* v. *Zelenski*, 287 Mass. 125, 129 (1934). Therefore, it was proper for the judge in his discretion to admit the testimony of the defendant's sister and to allow the jury to evaluate her credibility. See *Kendall* v. *May*, 10 Allen 59, 63 (1865).

4. The defendant's next assignment of error relates to the judge's refusal to permit the defendant to introduce

in evidence medical testimony and a hospital record, relating to his psychiatric history. Because the defense counsel specifically disavowed any intention of raising the defense of insanity, it appears that the defendant is arguing that this evidence should be admissible in order to prove that the defendant was incapable of deliberate premeditation because of mental disease. His claim must fail since such a defense is not recognized in this jurisdiction. *Commonwealth* v. *Fleming,* 360 Mass. 404, 408 (1971). *Commonwealth* v. *Cooper,* 219 Mass. 1, 4-6 (1914). As we noted in *Commonwealth* v. *Costa,* 360 Mass. 177, 185 (1971), "Some other jurisdictions have refused to permit evidence of an abnormal mental condition not amounting to legal insanity to be considered by the jury for any purpose. . . . This has long been the rule in Massachusetts . . . ." See *Commonwealth* v. *Mazza,* 366 Mass. 30 (1974).

5. We also reject the defendant's argument that it was error for the judge, in answering special questions posed by the jury, to reinstruct the jury on murder in the first and second degree and not on manslaughter. The judge's original instructions, as the defendant must concede, were thorough and fair; he instructed the jury on murder in the first and second degree as well as manslaughter. In response to the jury's questions concerning the difference between murder in the first and second degree and the definition of intoxication, there was no need again to explain manslaughter.

6. Nor do we find error in the denial of the motion for directed verdict. The recital of the facts, *supra,* and the circumstances surrounding the victim's death indicate that the judge was correct in submitting to the jury the question whether the defendant was so overcome by liquor that he was incapable of deliberate premeditation, a necessary element of murder in the first degree.

7. Having found no error in the conduct of the trial we turn now to a consideration of the entire case to determine whether under G. L. c. 278, § 33E, justice requires a change in the verdict. See *Commonwealth* v. *Jones,* 366 Mass. 805, 806-807 (1975); *Commonwealth* v. *Williams,* 364 Mass.

145, 150 (1973). Although our powers under § 33E are to be used sparingly, *Commonwealth* v. *Lannon*, 364 Mass. 480, 486 (1974), it is our duty to consider whether the verdict rendered represents a miscarriage of justice or whether a lesser degree of guilt would be more consonant with justice. *Commonwealth* v. *Mahnke*, 368 Mass. 662, 700-701 (1975).

We will not, as urged by the defendant, use § 33E to reduce the conviction to manslaughter. To do so would be contrary to the rule in this Commonwealth which permits only consideration of murder in the second degree in cases of voluntary intoxication. See *Commonwealth* v. *Delle Chiaie*, 323 Mass. 615 (1949); *Commonwealth* v. *Taylor*, 263 Mass. 356 (1928). Moreover, having reviewed the entire record, we see no justification for reducing the verdict to murder in the second degree or otherwise exercising our authority under § 33E. See *Commonwealth* v. *Rogers*, 351 Mass. 522 (1967).

*Judgment affirmed.*