COMMONWEALTH *vs.* LEO W. BLACK.

Essex.    June 15, 1976. — August 3, 1976.

Present: HALE, C.J., KEVILLE, & GRANT, JJ.

*Homicide.    Wanton or Reckless Conduct.    Evidence,* Conversation between husband and wife, Admissions and confessions. *Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Waiver.*

A defendant at a criminal trial was not prejudiced by the admission at a pre-trial hearing of testimony of police officers relating statements the defendant's wife had made to them concerning statements the defendant had made to her. [514-515]

Evidence at a criminal trial warranted a finding that the defendant had voluntarily waived his Miranda rights when he made incriminating

statements to police officers [516]; neither the defendant's consumption of liquor nor the fact that he had been in a fight prevented him from making a voluntary waiver [516-517].

At the trial of indictments for arson and the murder of four children who died in a house fire, the defendant's acquittal on the arson indictment did not preclude the jury's finding that the defendant was guilty of manslaughter. [517-518]

At the trial of indictments for arson and murder, there was no error in the judge's instructions to the jury that they could find the defendant guilty of involuntary manslaughter if they found that he had acted in a wanton and reckless way in causing a fire that resulted in the death of four people. [518]

INDICTMENTS found and returned in the Superior Court on May 21, 1974.

The cases were tried before *Donahue, J.*

*Morris M. Goldings* (*Herbert D. Friedman* with him) for the defendant.

*Michael T. Stella, Jr.*, Assistant District Attorney, for the Commonwealth.

HALE, C.J.   The defendant appeals from convictions of manslaughter on four indictments for murder after a trial held pursuant to G. L. c. 278, §§ 33A-33G[1] We find no error, and affirm the convictions. We review the defendant's assignments of error in the order argued, after first summarizing the evidence.

A fire in a single family home at forty-seven and one half High Street in Lawrence on February 1, 1973, took the lives of four of the children of Joan LeVasseur. The defendant was living with Mrs. LeVasseur at that time, and married her the following September.[2] The fire started in the early morning hours at a time when the defendant and Mrs. Black were in an upstairs bedroom. The defendant escaped from the building clad only in an undershirt. Mrs. Black helped one of the children, John, to escape from his bedroom, but the others were caught inside and were burned to death. Immediately following his escape, the defendant told a neighbor that he had been blown out

---

[1] The defendant was acquitted on an indictment charging arson.

[2] We refer to her as Mrs. Black in the remainder of this opinion.

through the back kitchen door after he had gone downstairs to investigate the fire and had found the kitchen engulfed in flames. The neighbor testified that he had observed no injuries, cuts, bruises, or burns on the defendant's body at that time.

A court officer of the District Court of Lawrence testified that shortly after 7:15 A.M. on February 1, 1973, he had received a telephone call from one who had identified himself as Leo Black and who had said, "I want to talk to Dr. Rizzo [a psychiatrist associated with the court] ... it's all my fault, it's all my fault; and I want to talk to Dr. Rizzo ... I'm in the hospital." Shortly thereafter Black met the court officer and acknowledged to him that he was the one who had made the call.

John LeVasseur testified to a conversation that he had overheard between his mother and the defendant in January, 1974. According to him, the defendant had been out of the house, and, seeking entry, had said, "Open the door or I'll break it down. ... I started the fire by putting a cigarette into the cushions [of the living room couch]. I wanted to make a small fire but it turned out to be a big one."

Other statements attributed to the defendant are described below in connection with the separate discussions of the assignments of error.

1. The defendant contends that the husband-wife disqualification provided in G. L. c. 233, § 20 (see *Commonwealth* v. *Gillis*, 358 Mass. 215 [1970]) was violated when the judge permitted testimony by several police officers relating statements the defendant's wife had made to them concerning statements the defendant had made to her, the defendant's statements being similar in import to the one described by John. The testimony in question was given during the pre-trial hearing of the motion to suppress statements made by the defendant to police officers. The defendant has not argued, other than by a bare assertion, that he was in any way prejudiced by that testimony or that it had any bearing whatever on the matters at issue in the voir dire. That testimony was not offered

by the prosecution at trial. Absent a demonstration of prejudice, there was no reversible error, even if such testimony was prohibited by G. L. c. 233, § 20. *Commonwealth v. Slaney,* 350 Mass. 400, 402-403 (1966).

2. The defendant contends that the judge erred in denying the defendant's motion to suppress statements made by him to Detective Lieutenant Leo Walsh of the State police at the Methuen police department on January 29, 1974, and by admitting testimony as to that conversation. He argues (a) that no Miranda warning was given at the time the admissions were made and (b) that the court made no finding on the question whether the defendant's capacity to make an intelligent waiver of his privilege against self-incrimination had been diminished by his having been drinking and in a fight. The judge made detailed findings supporting his decision to admit the statements. We must accept the judge's subsidiary findings if supported by the evidence, but it is our duty to make an independent review of his ultimate conclusion that the statements were made pursuant to voluntary waivers of the defendant's privilege against self-incrimination and right to counsel. *Commonwealth* v. *Mahnke,* 368 Mass. 662, 666-667 (1975).

We summarize the judge's subsidiary findings. Officer Danahy of the Methuen police department went to the defendant's residence on January 28, 1974, after receiving a call concerning a domestic disturbance. After Mrs. Black had told the officer that the defendant had called earlier that day and told her that he had set the fire, the officer gave the defendant his full Miranda warnings. The defendant said he knew what his rights were. John LeVasseur then corroborated his mother's report. Mrs. Black and John went to the police station with Officer Danahy while the defendant remained in the apartment. They were interviewed by Lieutenant Leo Walsh. The Lieutenant returned to the apartment along with several Methuen police officers, Mrs. Black and John. There he gave the defendant Miranda warnings, complete except for the warning that the interrogation could be stopped at any

time. The defendant made no admission but called Mrs. Black a liar when her statement was repeated to him. The defendant was arrested and brought to the police station. At his booking, at 1:00 A.M., the desk officer also gave complete Miranda warnings to the defendant, and offered him the use of a telephone, which he accepted. During his fingerprinting, at approximately 1:25 A.M., the defendant asked to see Lieutenant Walsh. Their conversation, as related by the Lieutenant, went as follows, "The defendant's words to me were, '. . . Leo what do you want me to say?' and I said, 'Just tell the truth,' and his response was, 'Well I'm going to plead guilty to this and get it over with. I've lived with it for a year,' and my response was, 'Well you'd better see your lawyer about this,' and he said, 'O.K.,' and the conversation terminated at that point." The defendant later said in the presence of two other officers, "This is the best night of my life . . . I've been living with this thing for a year and tonight I'm going to get squared away. I'll plead guilty and get it over with once and for all. I've been living with this thing for over a year and it hurts . . . .."

The judge concluded, "The defendant, by his own testimony, was given the complete Miranda warnings in the early A.M. of January 29, 1974. Any statement thereafter was volunteered by him."

(a) The judge's subsidiary findings leave us with no doubt that the defendant, when speaking to Lieutenant Walsh, had voluntarily relinquished his privilege against self-incrimination and his right to counsel. He had been given several warnings of his rights, had expressed his understanding of those rights, and had had an opportunity to use a telephone to obtain counsel. It was the defendant who sought out the Lieutenant to make the statement. Lieutenant Walsh was not required in the circumstances to repeat the warning. See *Commonwealth* v. *Frongillo*, 359 Mass. 132, 136-137 (1971). *Commonwealth* v. *Swenor*, 3 Mass. App. Ct. 65, 68 (1975).

(b) It is now argued that the judge failed to consider evidence tending to show that the defendant was intoxi-

Commonwealth *v*. Black.

cated at the time he made the statement and that he had been involved in a fight and thus was incapable of a voluntary waiver of his rights. While the judge made no specific finding concerning these matters (they were not specifically advanced before him), it is implicit in his ruling that the statements were volunteered and that he had the capacity to make such a waiver. There was ample evidence from which the judge could have concluded (as we do) that neither the defendant's consumption of liquor nor his bruises had prevented him from making a voluntary waiver. Several of the officers testified that although they had smelled alcohol on the defendant's breath, they had not observed any irregularity in his speech or walking. He also made a telephone call. Shortly before he was taken into custody, the defendant made out a check to his wife to provide for her overnight lodging. Thus we conclude that despite the unknown quantity of alcohol the defendant may have consumed, his physical, emotional, and mental condition did not negate voluntariness. *Commonwealth* v. *Festa*, 369 Mass. 419, 427 (1976). *Commonwealth* v. *Sires*, 370 Mass. 541, 543-544 (1976). *Commonwealth* v. *Roy*, 2 Mass. App. Ct. 14, 20-21 (1974). Contrast *Commonwealth* v. *Hosey*, 368 Mass. 571, 575-579 (1975). (There the defendant had been arrested for drunkenness, and had displayed, according to the testimony of the police, many symptoms of intoxication at the time he had made his statement.)

3. The defendant's argument concerning the admission of testimony by the court officer, based on the ground that the testimony was "ambiguous and unduly prejudicial to the defendant," is a mere repetition of the assignment of error, and the assignment is deemed waived. *Commonwealth* v. *Szemetum*, 3 Mass. App. Ct. 651, 652-653 (1975).

4. The defendant advances two arguments supporting his contention that his motions for a directed verdict, made at the close of the Commonwealth's evidence and renewed at the close of all evidence and after the verdicts, were incorrectly denied. The first argument assumes that the defendant's statements to Lieutenant Walsh should

have been excluded. As we have ruled that those statements were properly admitted, we look to the second argument. The defendant contends that if the jury believed his statement that he had intentionally set the fire, they would have found him guilty of arson. As they did not do so, he argues, they must have disbelieved that testimony, and the evidence that remained was insufficient to support a conviction of manslaughter. This argument is without merit. There was evidence which warranted the jury in finding that the defendant had set fire to a couch in disregard of the probable harmful consequences to the six people who were sleeping upstairs but without intending to burn any part of the building, and that such conduct was wanton and reckless. *Commonwealth* v. *Welansky,* 316 Mass. 383, 399 (1944).

5. Finally, the defendant contends, despite the lack of a timely objection, exception, or assignment of error, that the charge to the jury constituted reversible error as it created a "substantial risk of a miscarriage of justice." *Commonwealth* v. *Freeman,* 352 Mass. 556, 564 (1967). In particular, the defendant argues that the judge failed properly to describe the standard of care the defendant owed to the deceased children. The judge properly instructed the jury that they could find the defendant guilty of involuntary manslaughter if they should find that he had acted in a wanton and reckless way that caused the fire and resulted in the children's death. His instructions adequately defined the character of wanton and reckless conduct. As there was no error, there is no question of a miscarriage of justice.

*Judgments affirmed.*