COMMONWEALTH vs. TODD J. FOURNIER.

Plymouth.    March 7, 1977. — April 11, 1977.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Evidence,* Admissions and confessions; Opinion: expert.

Evidence at a criminal trial warranted a finding that a statement made
    by the defendant to police officers after the officers promised not to
    disclose the statement to a particular patrolman was voluntary. [347-
    349]
At the trial of a defendant on an indictment charging him with murder
    in the first degree, the judge did not abuse his discretion in permit-
    ting a forensic pathologist to testify to his opinion as to the position
    of the victim's arm when he was shot. [349-350]

INDICTMENT found and returned in the Superior Court
on January 28, 1976.

The case was tried before *Brogna, J.*

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Cortland A. Mathers* for the defendant.

*Helen M. Doona,* Assistant District Attorney, for the
Commonwealth.

BRAUCHER, J.   The defendant was indicted for. murder,
armed robbery, and unlawfully carrying a firearm, and was
convicted of murder in the second degree, larceny, and
unlawfully carrying a firearm. He was sentenced to life im-
prisonment for murder, the other charges were placed on
file with his consent, and he appeals under G. L. c. 278,
§§ 33A-33G, arguing two assignments of error. We affirm
the murder conviction. We hold that his statement to the
police was voluntarily given and was admissible in evi-
dence, notwithstanding the promise of the police that it
would not be disclosed to a particular police officer. We
further hold that a forensic pathologist was properly al-

lowed to testify to his opinion as to the position of the victim's arm when he was shot.

There was evidence of the following facts, among others. On October 24, 1975, the victim, a young man of eighteen, went into woods in the town of Middleborough with the defendant, also aged eighteen. Shortly thereafter, about 5 P.M., the victim was shot and killed by a bullet fired from his own .22 caliber rifle. After the shooting the defendant ran away with the gun, smashed it against trees, and hid the pieces. A little later he said to two cousins of his and a sixteen-year-old boy, "I just done a terrible thing." He also said to the boy, "that he just shot a kid," and added, "I only got six dollars off the stiff." The defendant was arrested about 6 P.M. and taken to the police station.

1. *The defendant's statement.* The defendant was given Miranda warnings on the way to the police station and said, "I didn't do nothing." On arrival he was given Miranda warnings a second and third time. He then said he didn't know what the police would be talking to him about, that he had arrived in Middleborough about 5:30 P.M., and that he did not know the victim. About 8 P.M. he made a telephone call to his home, and his mother came to the station. After speaking to her alone, he made a statement which was later admitted in evidence at the trial without objection. He said that the victim tried to rob him at gunpoint, that a struggle ensued and the gun went off, and that he must have run with the gun toward his home.

Later the chief of police arrived, gave Miranda warnings to the defendant for the fourth time, obtained his signature on a waiver form and his consent to the tape recording of the statement now in issue, and recorded the statement in the presence of the defendant's mother. At trial the defendant objected that the statement was induced by promises that it would not become public and that those promises could not be kept, and a voir dire hearing was held. A police officer testified that the defendant requested and was told that the statement would not be made available to a particular patrolman, Officer Shanks.

Apparently the defendant feared, on the basis of a prior incident, that Officer Shanks might disclose what he learned to others who might harm the defendant. The judge found that the police, when they gave the assurance, intended in good faith that information disclosed would not be given to Officer Shanks. He further found that "as far as the evidence discloses, up to now that assurance has been kept," and that the defendant understood that whatever statement he gave could and would be introduced at trial. The motion to suppress the statement was denied, and a transcript of the tape recording was read before the jury.

Later in the trial the defendant gave testimony generally consistent with the first pre-trial statement made in the presence of his mother: the victim tried to rob him at gunpoint; a struggle ensued and the gun went off; and he ran away with the gun, smashed it against trees, and hid the pieces. On cross-examination he was thoroughly impeached by his earlier denials. The tape-recorded statement conflicted with his testimony in at least two significant respects: (1) in the statement he denied buying a bottle of wine and taking it into the woods, and (2) in the statement he said he left the gun where it fell.

"It is established that a confession of guilt drawn from a defendant through threat or by promise of favor is not admissible because not voluntarily made, but induced by coercion or promise of benefit." *Commonwealth* v. *Sheppard*, 313 Mass. 590, 603-604, cert. denied, 320 U.S. 213 (1943). "The real question raised" in such a case "is whether the circumstances leading to the confession were so coercive as to render it inadmissible." *Commonwealth* v. *Makarewicz*, 333 Mass. 575, 587 (1956). For present purposes we assume that we would apply the same standard to admissions as to confessions, even though the admissions on their face are exculpatory rather than inculpatory. See *Miranda* v. *Arizona*, 384 U.S. 436, 476-477 (1966); *Commonwealth* v. *Mahnke*, 368 Mass. 662, 679 n.24 (1975), cert. denied, 425 U.S. 959 (1976). But the fact that a statement is exculpatory may be taken into account

in determining whether it is voluntary. *Commonwealth* v. *Harris*, 364 Mass. 236, 241 (1973) (false alibi). The burden is on the government to show voluntariness by a preponderance of the evidence. See *Commonwealth* v. *Mahnke*, *supra* at 680, and cases cited. The determination is based on the totality of the circumstances. *Commonwealth* v. *Cain*, 361 Mass. 224, 228 (1972).

The judge's findings in the present case are not explicit on the issue of voluntariness, probably because the defendant limited his objection to a claim that his tape-recorded statement was induced by a false promise, and "is not voluntary to that extent." In that setting we think the findings that the promise was made in good faith and was kept, and that use of the statement at trial was not a violation of the promise, fairly implied a finding that the statement was voluntary. We think the evidence sufficiently supported such a finding. Cf. *Commonwealth* v. *Harris*, 364 Mass. 236, 238 (1973) (finding that promise of prosecutor not to use statement did not extend to use in cross-examination).

Not every inducement renders a statement involuntary. In *Stein* v. *New York*, 346 U.S. 156, 185-186 (1953), one of the accused bargained actively with the police over terms, and refused to confess until the police agreed to release his father and the parole board agreed to release his brother; yet the confession was held voluntary. The promise in the present case did not hold out such inducements; it merely limited the use to be made of the statement the defendant was ready to make. He had consulted privately with his mother, and made the statement in her presence. Contrast *Commonwealth* v. *Cain*, 361 Mass. 224, 229 n.3 (1972) (father not allowed to be present). We think the judge could properly find that in the totality of the circumstances the defendant's will was not overborne.

2. *The pathologist's testimony.* A forensic pathologist testified that there were three wounds on the victim's body: two on his left arm, and one on the left side of his head. The judge allowed the witness to testify that the victim's arm "must have been extended laterally" at about

the level of the entrance wound to the head. This testimony was damaging to the defendant's theory of a struggle in which the gun was fired accidentally at close range. The defendant argues that the witness was not an expert in this "highly technical area" and that his opinion was "the wildest speculation." We disagree. The admission of expert testimony lies largely in the discretion of the trial judge. *Commonwealth* v. *Devlin,* 365 Mass. 149, 152 (1974). The testimony gave the jury "appreciable assistance" in determining the position of the arm most consistent with the nature and location of the wounds. *Commonwealth* v. *Boyd,* 367 Mass. 169, 182 (1975). There was no abuse of discretion.

3. *Section 33E.* We have reviewed the entire record and find no basis to exercise our powers under G. L. c. 278, § 33E, to order a new trial or to alter the jury's verdict, which was fully supported by the evidence before them.

*Judgment affirmed.*