COMMONWEALTH *vs.* RICHARD F. BURKE.

Norfolk.    October 10, 1978. — November 27, 1978.

Present: HALE, C.J., ROSE, & ARMSTRONG, JJ.

*Motor Vehicle,* Operation, Homicide. *Due Process of Law,* Vagueness
of statute. *Constitutional Law,* Admissions and confessions, Waiver
of constitutional rights. *Practice, Criminal,* Nolle prosequi. *District
Attorney.*

General Laws c. 90, § 24G, is not unconstitutionally vague. [698–700]
At the trial of a defendant charged with homicide by a motor vehicle
  under G. L. c. 90, § 24G, the judge did not err in instructing the jury
  on ordinary negligence, rather than wanton or reckless conduct, as
  the standard applicable to the indictment. [700–701]
Evidence at a hearing on a defendant's motion to suppress statements
  made by him to the police warranted findings that Miranda warn-
  ings were properly given the defendant prior to his interrogation
  and that the defendant knowingly and voluntarily waived his right
  to remain silent. [701–704]
There was no support in the record of a criminal case for the defend-
  ant's contention that he was subjected to undue publicity and pro-
  longed and unfair prosecution because of the district attorney's
  nolle prosequi of complaints in the District Court after indictments
  were returned and because of his indictment under the district
  attorney's major violators program. [704–705]

INDICTMENTS found and returned in the Superior Court
on November 24, 1976.

A motion to dismiss was heard by *Dwyer,* J., and the
cases were tried before *Leen,* J.

*Eugene F. Sullivan, Sr.* (*Eugene F. Sullivan, Jr.,* with
him) for the defendant.

*Charles J. Hely,* Assistant District Attorney, for the
Commonwealth.

ROSE, J. The defendant was tried by a jury in the Su-
perior Court on seven indictments, and convicted on five:

motor vehicle homicide, operating a motor vehicle negligently so as to endanger the lives and safety of the public, two charges of leaving the scene after causing personal injury, and leaving the scene after causing property damage. He was found not guilty on two indictments: operating a motor vehicle while under the influence of intoxicating liquor, and operating under the influence and thereby causing death. The indictments were based on the events of an accident which occurred on October 26, 1976, at approximately 7:30 P.M., on Route 126 in Bellingham, involving the defendant's tractor-trailer. As a result of the accident, a four-year-old child was killed and her father seriously injured.

The case is before us on the defendant's substitute bill of exceptions. The defendant argues (1) that G. L. c. 90, § 24G, inserted by St. 1976, c. 227, is unconstitutionally vague since it does not sufficiently designate the conduct proscribed; (2) that the trial judge's charge to the jury on ordinary negligence rather than wanton or reckless conduct was erroneous; (3) that the trial judge erred in denying the defendant's motion to suppress statements made by the defendant to police officers; (4) that the trial judge erred in denying the defendant's motion to dismiss the indictments on the ground that the nolle prosequi of complaints in the District Court by the district attorney after indictments were returned by the grand jury was an abuse of the district attorney's discretion; and (5) that the trial judge erred in allowing an object not admitted in evidence to remain in the presence of the jury until the last day of trial. We find that none of the defendant's contentions warrants reversal of his convictions.

1. We turn first to the defendant's contention that G. L. c. 90, § 24G, under which he was convicted of the negligent operation of a motor vehicle resulting in death, is unconstitutionally vague.[1]

---

[1] General Laws c. 90, § 24G, provides in part: "Whoever, upon any way or in any place to which the public has a right of access, or upon

To satisfy due process requirements, a criminal statute must be sufficiently clear so as to give notice of the conduct it prohibits. *Commonwealth* v. *A Juvenile,* 368 Mass. 580, 597 (1975). *Commonwealth* v. *Bohmer,* 374 Mass. 368, 371–372 (1978). If the terms of the statute are "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application," *Connally* v. *General Constr. Co.,* 269 U.S. 385, 391 (1926), the statute is void for vagueness. A statute will not fail for vagueness if it provides a comprehensible normative standard, "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with . . . ." *Broadrick* v. *Oklahoma,* 413 U.S. 601, 608 (1973), quoting from *United States Civil Serv. Commn.* v. *National Assn. of Letter Carriers,* 413 U.S. 548, 579 (1973). See *Commonwealth* v. *Orlando,* 371 Mass. 732, 734 (1977).

We are of the opinion that the motor vehicle homicide statute satisfies the due process criteria. In explicit language, the Legislature has set forth those elements necessary to find criminal culpability under § 24G, relevant to this indictment: (1) operation of a motor vehicle, (2) upon a public way, (3) recklessly or negligently so as to endanger human life or safety, (4) thereby causing the death of a person. The defendant argues that the term "negligently" does not afford sufficient notice to those who must be guided by the statute. We do not agree. While this aspect of § 24G has not previously been construed by the courts of the Commonwealth, the standard of "negligence" has been fully explicated in numerous Massachusetts decisions (see e.g., *Altman* v. *Aronson,* 231 Mass. 588, 591 [1919]; *Galliher* v. *Stewart,* 310 Mass. 77, 80 [1941]; *Beaver* v. *Costin,* 352 Mass. 624, 626 [1967]; *Goldstein* v. *Gontarz,*

---

any way or in any place to which members of the public have access as invitees or licensees, operates a motor vehicle . . . recklessly or negligently so that the lives or safety of the public might be endangered, and by any such operation so described causes the death of another person shall be guilty of homicide by a motor vehicle . . . ."

364 Mass. 800, 805 [1974]; *Scott* v. *Thompson*, 5 Mass. App. Ct. 372, 374–375 [1977]), and has been defined in many treatises (e.g., 2 Harper & James, Torts §§ 16.2, 16.9 [1956]; Prosser, Torts §§ 30–32 [4th ed. 1971]; Restatement [Second] of Torts §§ 282, 283 [1965] ).

We point out that the language in § 24G is modelled closely after that in § 24(2)(a), as amended through St. 1975, c. 156, § 1, prohibiting the negligent or reckless operation of a motor vehicle so as to endanger the lives or safety of the public.[2] Prior to inclusion of the element of negligence in § 24, that section withstood a constitutional attack for vagueness in *Commonwealth* v. *Pentz*, 247 Mass. 500 (1924). After revision of § 24, by St. 1928, c. 281, § 1, the negligence of a defendant became a material element of the operating to endanger offense.[3] See *Commonwealth* v. *Charland*, 338 Mass. 742 (1959); *Commonwealth* v. *Pearson*, 360 Mass. 851 (1971).

We conclude that the Legislature has clearly and sufficiently delineated the conduct prohibited by § 24G. Given the well-settled and comprehensible definition by negligence in the law of Massachusetts, we hold that § 24G provides a person of ordinary intelligence with sufficient notice of that conduct which is prohibited by the statute, and is therefore not unconstitutionally vague.

2. We find no error in the judge's instructions to the jury, defining ordinary negligence, rather than wanton or reckless conduct, as the standard applicable to the indictment charging the defendant with negligent motor

---

[2] General Laws c. 90, § 24(2)(a), as so amended, provides in part: "Whoever upon any way or in any place to which the public has a right of access, or any place to which members of the public have access as invitees or licensees, operates a motor vehicle recklessly, or operates such a vehicle negligently so that the lives or safety of the public might be endangered .... shall be punished ...."

[3] "The wealth of decisions which have arisen from civil actions of negligence thus are now in point in construing this criminal statute [§ 24(2)(a)]." Martin & Hennessey, Automobile Law and Practice § 787 (1967) (footnote omitted).

vehicle homicide under § 24G. The defendant's reliance on *Commonwealth* v. *Welansky*, 316 Mass. 383 (1944), is misplaced, since that case was governed by the law applicable to the crime of manslaughter. The defendant's request for an instruction that guilt might only be predicated on wanton or reckless conduct was patently at odds with the express language of the statute. The fact that the standards provided by § 24G are stated in the disjunctive ("recklessly or negligently") indicates the Legislature's intent that a finding of ordinary negligence will suffice to establish a violation of the statute. We hold that the trial judge was correct in charging the jury on ordinary negligence.

3. We find no error in the denial of the defendant's motion to suppress statements made by him to police officers. We summarize the facts relevant to this motion which could have been found on the evidence introduced at the pretrial hearing.

Approximately one hour and a half after the accident on Route 126, Bellingham police officers located the defendant's tractor-trailer in Milford, parked in a K-Mart parking lot. When the defendant arrived at the parking lot at 9:15 P.M. to pick up his vehicle, he was approached by police officers who inquired, "Mr. Burke?" The defendant responded, "Are you from Bellingham? . . . Are you here about the accident?" According to the testimony of Sergeant Ayotte of the Bellingham police department, the defendant then voluntarily accompanied the police to the station house. En route, the defendant asked, "What did I hit, anyway?", and was told that the matter would be discussed at the police station. Sergeant Ayotte testified that upon their arrival at the station, he read the Miranda rights to the defendant and that the defendant then waived his right to remain silent and expressed a willingness to talk. The defendant responded to questions concerning the accident and said that he had been operating his tractor-trailer on Route 126 in Bellingham at approximately 7:30 P.M. He told the police that he believed

he had struck a tree limb. The defendant took a breath-alyser test at the request of the police and said that he had consumed several beers and several "shots" of whiskey upon returning home that evening some time after the incident. Sergeant Ayotte testified that, in his opinion, the defendant was under the influence of alcohol while at the police station.

At the pretrial hearing the defendant argued in support of his motion to suppress that he had been placed under arrest at the K-Mart parking lot and that he had been subjected to custodial interrogation at the police station for more than one-half hour before being apprised of his Miranda rights. He argued as a second basis for his motion that, even if Miranda rights were properly given, he was incapable of making a knowing and intelligent waiver because of his intoxicated condition when taken into custody. After hearing the testimony summarized above, the judge denied the defendant's motion. The judge stated that, in denying the motion, he had considered the factor of the defendant's intoxicated state.

a. *The Miranda warnings.* The Commonwealth had the burden of proving that the Miranda warnings were properly given. *Commonwealth* v. *Smith,* 2 Mass. App. Ct. 821, 822 (1974). The narrow issue before us is whether the evidence introduced at the pretrial hearing was sufficient to warrant the judge's denial of the motion to suppress. See *Commonwealth* v. *Hogg,* 4 Mass. App. Ct. 225, 227 (1976).

While the defendant's bill of exceptions does not include a statement of findings and rulings by the trial judge, we think that the denial of the motion to suppress implies a finding (see *Commonwealth* v. *Barker,* 311 Mass. 82, 88 [1942]; *Commonwealth* v. *Fournier,* 372 Mass. 346, 349 [1977]; *Commonwealth* v. *Hogg, supra* at 227; *Commonwealth* v. *Black,* 4 Mass. App. Ct. 512, 517 [1976]; *Commonwealth* v. *Corgain,* 5 Mass. App. Ct. 899 [1977]) that the defendant voluntarily accompanied the police to the station house and that he was properly warned of his rights upon arrival there.

The sketchy summary of testimonial evidence in the bill of exceptions relating to the pretrial hearing does not show that the defendant was subjected to any police interrogation prior to his arrival at the station house, where he was given the Miranda warnings by the police, other than the defendant's bare allegation to that effect, which the trial judge was not required to believe. See *Commonwealth* v. *Femino*, 352 Mass. 508, 512–513 (1967). The record shows, rather, that the police did not initiate questioning until after the warnings had been given and the defendant had waived his rights. The record before us indicates that the defendant's statements made prior to the giving of Miranda warnings were spontaneous and were not elicited by police interrogation. See *Commonwealth* v. *Borodine*, 371 Mass. 1, 4–5 (1976), cert. denied, 429 U.S. 1049 (1977). Cf. *Commonwealth* v. *Haas*, 373 Mass. 545, 552 (1977).

b. *Voluntariness of defendant's waiver.* The Commonwealth had the burden of proving by a preponderance of the evidence (*Commonwealth* v. *Roy*, 2 Mass. App. Ct. 14, 18 [1974]; see *Commonwealth* v. *Hooks*, 375 Mass. 284, 288 n.1 [1978]) that the defendant understood the Miranda warnings and knowingly and intelligently waived his right to remain silent. See *Miranda* v. *Arizona*, 384 U.S. 436, 444 (1966); *Commonwealth* v. *Hooks, supra* at 288–289. The voluntariness of the defendant's waiver is tested by examining the totality of all the circumstances. *Commonwealth* v. *Borodine, supra* at 6. *Commonwealth* v. *Hooks, supra* at 289.

The bill of exceptions does not contain explicit findings by the trial judge on the issue of voluntariness but does refer to the judge's statement that he had considered the factor of the defendant's intoxicated state before denying the motion to suppress. We read this statement of the trial judge to mean that he had made subsidiary findings of fact and had weighed the factors necessary to find that the defendant's condition was such that he was capable of making a knowing and intelligent waiver. Cf. *Common-*

*wealth* v. *Hosey*, 368 Mass. 571, 574 n.1 (1975). We think that the denial of the motion under these circumstances implied a finding that the waiver was valid. (See *Commonwealth* v. *Barker, supra* at 88; *Commonwealth* v. *Fournier, supra* at 349; *Commonwealth* v. *Hogg, supra* at 227; *Commonwealth* v. *Black, supra* at 517; *Commonwealth* v. *Corgain, supra* at 899.) The record before us contains no evidence which indicates that the defendant's appearance or behavior was such that the police should have discerned, or the judge should have found, that the defendant could not comprehend the significance of his actions. *Commonwealth* v. *Roy, supra* at 20. Contrast *Commonwealth* v. *Hosey, supra* at 571; *Commonwealth* v. *White*, 374 Mass. 132 (1977), cert. granted, 436 U.S. 925 (1978).

In the circumstances we conclude that the trial judge's implied findings and express ruling denying the motion to suppress were warranted by the evidence introduced at the pretrial hearing.

4. The defendant next argues that the district attorney's nolle prosequi of complaints in the District Court, after indictments were returned by the grand jury, constituted an abuse of discretion. The defendant contends that his indictment under the Norfolk district attorney's "major violators" program subjected him to undue publicity and prolonged and unfair prosecution. These arguments are without merit. The nolle prosequi was well within the discretionary powers of the district attorney (see *Commonwealth* v. *Wheeler*, 2 Mass. 172 [1806]; *Attorney Gen.* v. *Tufts*, 239 Mass. 458, 537–538 [1921]; contrast *Commonwealth* v. *Benton*, 356 Mass. 447 [1969]), as was the decision to prosecute under the "major violators" program. See *Commonwealth* v. *Coyne*, 372 Mass. 599, 600–601 (1977).

The defendant's contention regarding prejudice resulting from his prosecution by way of indictment because of alleged delays and widespread publicity assumes facts which have no basis in the bill of exceptions. In order to

have this court consider and decide an issue, the defendant must include in the record on appeal all of the evidence, facts, or information pertinent to that issue. *Commonwealth* v. *Bottiglio*, 357 Mass. 593, 597 (1970).

5. The defendant's final contention concerning the continued presence of a detached section of the defendant's tractor-trailer in the courtroom also depends entirely upon facts which do not appear expressly or impliedly in the bill of exceptions. The issue cannot be reached on this record.

*Exceptions overruled.*